Santiago M. LEAL et ux., Appellants,

v.

C. C. PITTS SAND AND GRAVEL, INC., et al., Appellees.

No. 14558.

Court of Civil Appeals of Texas.

San Antonio.

March 22, 1967.

Rehearing Denied April 12, 1967.

Lieck & Lieck, Raul Villarreal, San Antonio, for appellants.

Beckmann, Stanard, Wood & Vance, John H. Wood, Jr., Hugh P. Shovlin, San Antonio, for appellees.

BARROW, Chief Justice.

This is an action by parents for wrongful death of their infant daughter as a result of injuries sustained in an automobile collision when the mother was about six or seven months pregnant. Appellants alleged that shortly after the accident the mother commenced having labor pains and after hard labor the infant was born prematurely and died two days later. The question presented is whether Texas Courts recognize a cause of action under the Wrongful Death Statute (Arts. 4671–4678, Vernon's Ann.Civ.St.), based on a prenatal injury to a viable child born alive, but dying as a result of the prenatal injury. The trial court sustained

an exception to this severed cause of action and dismissed same.

This question has not been before the Texas Supreme Court since 1943. As late as 1949, the rule, as supported by the numerical weight of authorities throughout the United States, was that a child or its personal representative, in the absence of statute, had no right of action for prenatal injuries. See 10 A.L.R.2d 1059. In 1949 the Ohio Supreme Court in Williams v. Marion Rapid Transit, Inc., 152 Ohio St. 114, 87 N.E.2d 334, 10 A.L.R.2d 1051, held there was a cause of action for injuries to a viable child en ventre se mère which resulted in its being born with crippling injuries, and the Minnesota Supreme Court in Verkennes v. Corniea, 229 Minn. 365, 38 N.W. 2d 838, 10 A.L.R.2d 634, held there was a cause of action for wrongful death where an unborn viable child died undelivered because of defendant's negligence. These holdings have been followed by numerous cases from twenty-four different jurisdictions, many of them expressly overruling prior holdings, which have brought about an abrupt reversal of the earlier rule denying recovery.[1] 38 Wash.L.Rev. 390.

These cases uniformly recognize a cause of action for prenatal injuries, although some authorities have said the rule should be limited to a fetus which was viable at the time of the injury,[1a] and some authorities

---

[1]. Smith v. Brennan, 31 N.J. 353, 157 A.2d 497 (1959); Hornbuckle v. Plantation Pipe Line Co., 212 Ga. 504, 93 S.E.2d 727 (1956); Rodriguez v. Patti, 415 Ill. 496, 114 N.E.2d 721 (Ill.1953); Rainey v. Horn, 221 Miss. 269, 72 So.2d 434 (1954); State of Maryland, Use of Odham v. Sherman, 234 Md. 179, 198 A.2d 71 (1964); Sinkler v. Kneale, 401 Pa. 267, 164 A.2d 93 (Pa.1960); Puhl v. Milwaukee Auto Ins. Co., 8 Wis.2d 343, 99 N.E.2d 163 (1960); Seattle-First Nat. Bank v. Rankin, 59 Wash.2d 288, 367 P.2d 835 (1962); Hatala v. Markiewicz, 26 Conn. Supp. 358, 224 A.2d 406 (1966).

[1a]. Prates v. Sears, Roebuck & Co., 19 Conn.Sup. 487, 118 A.2d 633 (1955); Gorke v. Le Clerc, 23 Conn.Sup. 256, 181 A.2d 448 (1962); Worgan v. Greggo &

Ferrara, Inc., 11 Terry 258, 128 A.2d 557 (Del.1956); Wendt v. Lillo, 182 F.Supp. 56 (D.C.Iowa 1956); Hale v. Manion, 189 Kan. 143, 368 P.2d 1 (1962); Mitchell v. Couch, 285 S.W.2d 901 (Ky.1955); Valence v. Louisiana Power & Light Co., 50 So.2d 847 (La.App.1951); Damasiewicz v. Gorsuch, 197 Md. 417, 79 A.2d 550 (1951); Verkennes v. Corniea, 229 Minn. 365, 38 N.W.2d 838, 10 A.L.R.2d 634 (1949); Woods v. Lancet, 303 N.Y. 349, 102 N.E.2d 691 (1951); Jasinsky v. Potts, 153 Ohio St. 529, 92 N.E.2d 809 (Ohio 1950); Mallison v. Pomeroy, 205 Or. 690, 291 P.2d 225 (1955); Fowler v. Woodward, 244 S.C. 608, 138 S.E.2d 42 (1964); Hall v. Murphy, 236 S.C. 257, 113 S.E.2d 790 (1960); Shousha v. Matthews Drivurself Service, Inc., 210 Tenn. 384, 358 S.W.2d 471 (1962).

require that the child be born alive.[1b] Prosser, Law of Torts, 3rd Ed., pp. 356–357. It is recognized that an action for wrongful death will, in a large measure, turn upon the construction of the death statute of the particular State, i. e., under the Texas statute evidence of pecuniary loss is necessary to support a judgment for parents for death of a child. Banker v. McLaughlin, Tex.Civ. App., 200 S.W.2d 699, aff., 146 Tex. 434, 208 S.W.2d 843, 8 A.L.R.2d 1231; Jasper County Lumber Co. v. McMillan, Tex.Civ. App., 188 S.W.2d 731, writ ref'd.

Appellants frankly concede that the case law of this State is now against such a cause of action. In Magnolia Coca Cola Bottling Co. v. Jordan, 124 Tex. 347, 78 S.W.2d 944, 97 A.L.R. 1513 (1935), the Court considered the identical question presented here of whether damages could be recovered under the Texas wrongful death statute for the death of a child resulting from prenatal injuries. The Court, after a review of authorities from other jurisdictions which had uniformly denied recovery for prenatal injuries, together with a construction of the Texas wrongful death and "homicide" statutes, determined that the trial court had correctly held that the parents could not recover damages for the death of the child which had lived nineteen days after its birth. See also, Lewis v. Steves Sash & Door Co., Tex.Civ.App., 177 S.W.2d 350 (1943, writ ref'd); Turnknett v. Keaton and Acuff, Ct. of App., 5th Cir., 266 F.2d 572.

■ Appellants urge, however, that this rule should now be reviewed in view of the overwhelming trend of the cases allowing liability for prenatal injury to a viable child. We agree with this proposition, however, this question is properly one for the Supreme Court or the Legislature. It is our duty as an intermediate court, in our judicial system, to follow the decisions of our Supreme Court. Swilley v. McCain, 374 S.W.2d 871 (Tex.Sup.1964); Slocum v. Galveston County, Tex.Civ.App., 410 S.W. 2d 487, no writ; Stewart v. Janes, Tex.Civ. App., 393 S.W.2d 428, writ ref'd; Tunnell v. Otis Elevator Co., Tex.Civ.App., 400 S. W.2d 781, 783, writ ref'd, n. r. e., Tex., 404 S.W.2d 307; Campbell v. Campbell, Tex. Civ.App., 362 S.W.2d 904, 908, writ dism'd; McClelland v. Briscoe, Tex.Civ.App., 359 S.W.2d 635, 638; 15 Tex.Jur.2d, Courts, § 137.

■ The trial court correctly held, under the authority of Magnolia Coca Cola Bottling Co. v. Jordan, supra, that damages may not be recovered by parents under the Texas Wrongful Death Statute for the death of an infant from prenatal injuries.

The judgment is affirmed.

## KLINGEMAN, Justice.

I concur in the foregoing opinion for the reason that I accept and believe that lower courts are bound by the decisions of the Supreme Court, and it is our duty as an intermediate court to follow the decisions of our Supreme Court. 15 Tex.Jur.2d Courts § 137 (1960), and cases thereunder cited. However, in view of the overwhelming trend in other jurisdictions away from the holding in Magnolia Coca Cola Bottling Co. v. Jordan, since that decision by our Supreme Court in 1935, I feel confident that the Supreme Court will thoroughly review the matter of liability for prenatal injuries.

## CADENA, Justice.

I would hold that plaintiffs' petition, the contents of which are summarized in the opinion of the Chief Justice, states a cause

---

**1b.** Amann v. Faidy, 415 Ill. 422, 114 N.E. 2d 412 (1953); Keyes v. Construction Service, Inc., 340 Mass. 633, 165 N.E.2d 912 (1959); Howell v. Rushing, 261 P.2d 217 (Okl.1953); In re Logan's Estate, 3 N.Y.2d 800, 166 N.Y.S.2d 3, 144 N.E.2d 644 (1957); Norman v. Murphy, 124 Cal.App.2d 95, 268 P.2d 178 (Calif.1954); West v. McCoy, 233 S.C. 369, 105 S.E.2d 88 (1958); Hogan v. McDaniel, 204 Tenn. 235, 319 S.W.2d 221 (1958); Bennett v. Hymers, 101 N.H. 483, 147 A.2d 108 (N.H.1958).

of action and that the trial court erred in sustaining defendants' special exceptions.

The rule denying recovery for prenatal injuries to a child subsequently born alive emerged from the judicial womb in 1884 in Dietrich v. Inhabitants of Northhampton,[1] although there is some dispute as to whether the child in that case was actually born alive.[2] It is apparent that the principal underpinning for the decision in Dietrich was the notion that a child in its mother's womb is merely a part of the mother and has no separate existence. This rationale is somewhat surprising, since at the time Dietrich was decided, both medical science and religion considered that life begins at conception,[3] and, even in law, the jurisprudential concept that life begins only at birth was not consistently followed in the area of property law,[4] nor, according to some authorities, in the administration of the criminal law.[5]

The Dietrich doctrine was followed with such singular unanimity that when the Texas Supreme Court considered the problem in 1935 in Magnolia Coca Cola Bottling Co. v. Jordan it could say, "We have found no decision (and the parties have cited none) by an appellate court of final jurisdiction holding that damages for prenatal injury may be recovered either by the injured child, if it is born and lives or by its beneficiaries in the event of its death from such injury."[6]

In following what was then the unanimous American rule denying recovery in cases of this nature, the Court in Magnolia pointed out that the decisions were based on three reasons: (1) lack of authority; (2) practical inconvenience and possible injustice; and (3) lack of a human being in esse to whom defendant owed a duty.[7]

As is pointed out in the opinion of the Chief Justice herein, every court which has considered the problem in the last two decades has allowed recovery. Prior decisions denying recovery have been overruled by every court which has reconsidered the problem, so that today the no-recovery rule represents the last expression of judicial attitude only in Texas, Rhode Island and Alabama.[8]

Considerations of difficulty of proof and fear of creating opportunities for the fabrication of false claims seemingly played an important part in the Magnolia decision.[9] Again, every decision within the past two decades has rejected the difficulty of proof and the possibility of fraudulent claims as adequate reasons for the denial of a remedy. Questions of causation and reasonable certainty which may arise in prenatal in-

1. 138 Mass. 14, 52 Am.Rep. 242 (1884).

2. Stewart, the Case of the Prenatal Injury, 15 U.Fla.L.Rev. 527, 530 (1963).

3. At least since 1860 medical men had considered the fetus as a separate entity. 1 Beck, Elements of Medical Jurisprudence 276 (11th ed., 1860). For a discussion of the religious concept concerning the inception of life, see Foote and Saunders, Cases on Family Law 5B–21 (1962).

4. See the famous "Let us see what this nonentity can do" portion of the opinion of Butler, J., in Thellusson v. Woodford, 4 Ves. 227, 31 Eng.Rep. 117, 163 (1798).

5. Rex. V. Senior, 1 Mood.Cr.C. 346, 168 Eng.Rep. 1298 (1832).

6. 124 Tex. 347, 78 S.W.2d 944, 945 (1935). Apparently, the Court's attention was not called to the opinion of the Canadian Court in Montreal Tramways v. Levellie (1933), Can.S.C. 456 (1933), D.L.R. 337.

7. 78 S.W.2d at 947.

8. Prosser, Torts 355–356 (3rd ed., 1964). Because of broad language found in opinions denying recovery to parents for an infant that died in its mother's womb, the question may be considered as still doubtful in three other States. Mace v. Jung, 210 F.Supp. 706 (D.Alaska, 1962); Drabbels v. Skelly Oil Co., 155 Neb. 17, 50 N. W.2d 229 (1951); Howell v. Rushing, 261 P.2d 217 (Okl.1953).

9. This is apparent from the fact that the Court quoted the following statement by O'Brien, J. in Walker v. Great Northern Ry. Co. of Ireland, 28 L.R.Ir. 69, 81 (1890): "A rule of right may well be founded upon the inherent and inevitable difficulty or impossibility of proof."

jury cases are not significantly different from the ones present in thousands of negligence cases which the courts resolve daily.[10]

In adopting the biologically erroneous[11] legal theory which denies separate existence to the fetus, the Court in Magnolia, while expressing doubt as to the propriety of supporting a rule of civil law by analogy to the criminal law, called attention to the fact that in Texas, by statute, in homicide cases "the person upon whom the homicide is alleged to have been committed must be in existence by actual birth."[12] If we are to resort to the criminal law for guidelines in cases involving civil liability for prenatal injuries, it would seem more appropriate to direct our attention to those statutes which deal specifically with injuries to an unborn child. Our statute defines abortion in terms of the destruction of the "life" of the fetus.[13] Another statute makes it unlawful to destroy, before actual birth, "the life in a child in a state of being born."[14] These statutes clearly announce that the protection of the fetus and of its right to life is a part of the public policy of our state.

Our Supreme Court in its Magnolia opinion advanced a further reason for denying recovery for prenatal injuries. It invoked that fictitious character of the common law, the ordinary prudent man, asserting that such a man reckons life from the time of birth, that his "conscious care and solicitude are for the expectant mother and not

for the unborn child apart from her," and that his "obligations and his liability in damages for his acts should be measured and determined from his viewpoint."[15]

The Court's basic assumption concerning the solicitude showered upon a woman quick with child is not factually accurate. In view of society's strong interest in the propagation of the human race, the conscious care and solicitude which the ordinary prudent man extends to the expectant mother cannot be said to reflect solely a concern for her welfare apart from that of the unborn child. From the moment that it is known that she is with child, her concern, as well as that of her husband and the attending physician, is to insure that the period of gestation will culminate in the normal birth of a healthy child.

The Magnolia opinion declares that decisions which "protect unborn children in property and property rights but undertake by the indulgence of a fiction of existence to save to the child property which in fairness belongs to it."[16] In view of the fact that the separate existence of the unborn child was, in 1935, accepted by all except jurists, it is somewhat surprising that the Court should brush this aside by applying to this medical fact that Benthamite epithet, "fiction." It is the purely legalistic concept that the unborn child is but a part of its mother, which is contrary to scientific fact and common sense.[16a]

---

10. 2 Harper and James, Torts 1028–1029 (1956). The problems of causation and reasonable certainty which may arise in prenatal injury cases would appear to be no more formidable than those which the courts confidently face in cases involving miscarriages, St. Louis S.W. Ry. Co. of Texas v. Mitchell, 25 Tex.Civ.App. 197, 60 S.W. 891 (1901, writ ref'd), and cases involving traumatic neuroses. Sutton Motor Co. v. Crysel, 289 S.W.2d 631 (Tex.Civ.App., 1956, no writ).

11. See, generally, Gordon, The Unborn Plaintiff, 63 Mich.L.Rev. 579 (1965).

12. 78 S.W.2d at 948. The statute in question is Tex.Pen.Code Ann. (1961) Art. 1205.

13. Tex.Pen.Code Ann. (1961) Art. 1191.

14. Id. Art. 1195.

15. 78 S.W.2d at 949.

16. Id. at 948.

16a. The absurdity of the doctrine that the unborn child is but a part of its mother is obvious. It is not uncommon today for a living infant to be born after the death of the mother. This would not be possible if, as the courts were once wont to insist, the child was only a part of the mother and had no separate existence.

In any event there would seem to be no obstacle to resort to the same "fiction" in the prenatal injury cases, unless we are prepared to argue that the right to life and the right to begin life with a sound body do not "in fairness" belong to the unborn child, or else that those rights are not as worthy of protection as the right to inherit a mule.

It is true that the existence of a duty, and the breach of such duty, constitute the foundation of liability in negligence law. But this does not compel the conclusion that the person to whom the duty is owed must be known or even knowable.[17] It is doubtful that anyone would seriously argue that the pharmacist who negligently prepares a drug today should be allowed to escape liability for the death of a child, born next month, to whom the medicine was administered, on the ground that he owed no duty to the child who was unborn at the time the negligent act was committed.[18]

It cannot be denied that, generally, it is the duty of a Court of Civil Appeals to follow the decisions of our Supreme Court, and that mere dissatisfaction with a rule announced by the Supreme Court can in no way dilute the authoritative nature of the pronouncements of that supreme tribunal. But where the rule is based on erroneous assumptions of fact, where every court which has considered the problem in the last score of years has rejected the assumptions which form the basis for the rule, and where there is every reason to believe that our Supreme Court, on reconsideration of the problem in the light of medical knowledge and the present state of judicial authority,[19] will overturn its prior decision, it cannot be persuasively argued that it is the duty of a Court of Civil Appeals to blindly write an opinion which it feels certain will be reversed.[20]

17. Seavey, Book Review, 45 Harv.L.Rev. 209, 210 (1931).

18. The statement that there was "no duty" begs the essential question—whether the interests of the plaintiff are entitled to legal protection against defendant's conduct. See Green, Judge and Jury 59 (1930). The "foreseeability" question, whether posed in connection with the duty problem or the question of proximate cause, presents no great obstacle. It is not demanding too much to insist that the driver of a motor vehicle should know that a percentage of females on the highway will be pregnant. It should make no difference that the mother is carrying the child in her womb, rather than in her arms.

19. The common law, if it is to have vitality, must be "elastic enough to adapt itself to current medical and scientific truths so as to function as an efficient rule of conduct in our modern complex society." Puhl v. Milwaukee Automobile Ins. Co., 8 Wis.2d 343, 349, 99 N.W.2d 163, 171 (1959).

20. In this case there is no need for concern with the frequently expressed fear that a change in the law will result in frustration of past transactions consummated in reliance on existing rules. There is little reason to assume that defendant in this case acted negligently in reliance on the Magnolia decision. "The picture of a bewildered litigant, lured into a course of action by the false light of a decision, only to meet ruin when the light is extinguished and the decision overturned, is for the most part a figment of excited brains." Cardozo, The Growth of the Law 122 (1933).