Kimberly **WITTY**, Individually and as Surviving Parent of Baby Witty, a Nonborn Child, Appellant,

v.

**AMERICAN GENERAL CAPITAL DISTRIBUTORS, INC.,** Appellee.

No. 01–84–0667–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 3, 1985.

Rehearing Denied Aug. 22, 1985.

Jeffery M. Stern, Michael W. Melton, Houston, for appellant.

Michael G. Terry, Vinson & Elkins, Houston, for appellee.

Before EVANS, C.J., and COHEN and DUNN, JJ.

## OPINION

EVANS, Chief Justice.

The plaintiff, Kimberly Witty, appeals from a take-nothing summary judgment entered in favor of the defendant, American General Capital Distributors, Inc. The judgment is reversed and the cause is remanded.

The plaintiff sued individually, and also as surviving parent of her deceased unborn child, alleging that her baby had been fatally injured as a result of the defendant's negligence. She alleged that while employed by the defendant as a receptionist, she tripped over a utility outlet and fell with such force that her unborn baby was fatally injured. She asserted that the defendant was negligent in various particulars, and that as a direct and proximate result of the occurrence: (1) her baby was bruised and suffered great shock to its nervous system, as well as physical pain and mental anguish, (2) she was deprived of her baby's support, companionship, society, affection, and comfort, (3) she suffered severe emotional trauma and mental anguish because of her uncertainty about the baby's fate until its body was surgically removed from her womb nine days after the accident, and (4) alternatively, that she sustained property damage because of the destruction of her fetus.

As the baby's surviving parent, Mrs. Witty sought $1 million for her child's prenatal injuries and other damages relating to its death; and in her individual capacity, she sought an additional $1 million as damages for the loss of her baby's support and companionship; $500,000 as damages for her own emotional trauma and mental anguish, which she allegedly suffered during and after the nine-day period following the accident; and $500,000 as property damages for the loss of her fetus.

The motion for summary judgment set forth two legal theories of defense, in which the defendant contended:

(1) That Mrs. Witty was barred from asserting a claim against the defendant, her employer, under article 8306, section 3a, of the Texas Workers' Compensation Act. Mrs. Witty had made a claim for and had received worker's compensation payments of $546 for wages lost during a three-week period after the accident;

(2) That the deposition testimony of the physician who surgically removed Mrs. Witty's dead baby from her womb established that the fetus was not alive at the time of such separation, and therefore, Mrs. Witty's petition did not state a valid cause of action.

The summary judgment recites that Mrs. Witty, individually and as next friend of her unborn child, was entitled to take nothing against the defendant, but it does not specifically refer to either of the grounds set forth in the defendant's motion.

The trial court correctly determined that because the child was not born alive, Mrs. Witty was not entitled to recover damages, in her capacity as representative of the estate of her deceased child, for the child's physical pain and suffering or for other damages relating to the child's death. Although these damages ordinarily would be recoverable by the representative of a deceased child's estate under the Texas Survival Statute, Tex.Rev.Civ.Stat.Ann. art. 5525 (Vernon 1958), the Texas Supreme Court so far has not recognized an action to recover such damages unless the child is born alive. *See Yandell v. Delgado,* 471 S.W.2d 569 (Tex.1971). In *Yandell,* the supreme court by per curiam opinion approved the holding of the Fort Worth Court of Civil Appeals, stating:

We hold that subject, of course, to the proof required in such cases *a cause of action* does exist for prenatal injuries

sustained at any prenatal stage *provided the child is born alive and survives.* 471 S.W.2d at 570 (emphasis supplied).

Mrs. Witty contends that the supreme court's decision in *Yandell* is not squarely on point with the facts here and that this is a case of first impression. She urges that we seize the initiative and give legal recognition to the claims she asserts on behalf of her baby's estate.

■ An intermediate court is obliged to follow the Texas Supreme Court's authoritative expressions of the law and to leave any changes in the law to that court. *Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex. 1964); *see also Leal v. C.C. Pitts Sand and Gravel, Inc.*, 413 S.W.2d 825, 827 (Tex. Civ.App.—San Antonio), *rev'd on other grounds*, 419 S.W.2d 820 (Tex.1967); *Stephenson v. Perlitz*, 524 S.W.2d 786, 788–89 (Tex.Civ.App.—Beaumont 1975), *rev'd on other grounds*, 532 S.W.2d 954 (Tex.1976); *Metal Structures Corp. v. Plains Textiles, Inc.*, 470 S.W.2d 93, 99 (Tex.Civ.App.— Amarillo 1971, writ ref'd n.r.e.).

It is accordingly this court's duty to recognize and apply the supreme court's deliberate statement of the law and, by exercising judicial self-restraint, to refrain from extending or restricting the scope of the supreme court's declaration. *See Watson v. Zep Manufacturing Co.*, 582 S.W.2d 178, 180 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.). This court therefore adopts, as the law of this case, the decision of the Texas Supreme Court in *Yandell*, which recognizes a cause of action brought on behalf of a child for prenatal injuries, provided the child is born alive.

■ *Yandell* does not preclude Mrs. Witty's causes of action, in her individual capacity, at common law and under the Wrongful Death Statute. In her petition, Mrs. Witty alleged individual causes of action at common law and under the Wrongful Death Statute, independently of the claim asserted by her as representative of her deceased child's estate, for damages allegedly sustained because of her emotional distress during the nine-day period following the accident, and because of the loss of her baby's society and companionship, and for the mental anguish she suffered.

■ Since the Texas Supreme Court's decision in *Hill v. Kimball*, 76 Tex. 210, 13 S.W. 59 (1890), and with increased frequency in recent years, our courts have recognized a common law cause of action for emotional distress based upon a plaintiff's "contemporaneous perception" of an injury either intentionally or negligently inflicted upon another. *See Dave Snelling Lincoln-Mercury v. Simon*, 508 S.W.2d 923 (Tex. Civ.App.—Houston [1st Dist.] 1974, no writ); *Landreth v. Reed*, 570 S.W.2d 486 (Tex.Civ.App.—Texarkana 1978, no writ); *Covington v. Estate of Foster*, 584 S.W.2d 726 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.); *Bedgood v. Madalin*, 589 S.W.2d 797 (Tex.Civ.App.—Corpus Christi 1979), *rev'd on other grounds*, 600 S.W.2d 773 (Tex.1980); *Newman v. Minyard Food Stores, Inc.*, 601 S.W.2d 754 (Tex.Civ.App. —Dallas), *writ ref'd per curiam*, 612 S.W.2d 198 (Tex.1980); *Apache Ready Mix Co. v. Creed*, 653 S.W.2d 79 (Tex.App.— San Antonio 1983, no writ); *Dawson v. Garcia*, 666 S.W.2d 254 (Tex.App.—Dallas 1984, no writ). This theory of recovery has been applied in a case of prenatal injury to an unborn child. *Haught v. Maceluch*, 681 F.2d 291 (5th Cir.1982).

■ A statutory cause of action is also recognized under the Texas Wrongful Death Statute, Tex.Rev.Civ.Stat.Ann. art. 4671 et seq. (Vernon Supp.1985), which allows damages for loss of a minor child's society and companionship and for mental anguish. *See Sanchez v. Schindler*, 651 S.W.2d 249 (Tex.1983); *City of Houston v. Stoddard*, 675 S.W.2d 280, 285 (Tex.App.— Houston [1st Dist.] 1984, writ ref'd n.r.e.). The Wrongful Death Statute does require that the wrongful occurrence be of such a character as would have entitled the injured party to maintain an action had death not ensued. Tex.Rev.Civ.Stat.Ann. art. 4672 (Vernon Supp.1985); *Leal v. C.C. Pitts Sand and Gravel Co.*, 419 S.W.2d at 821. But this requirement speaks to the *character* of the wrongful occurrence, *see*

*Schwing v. Bluebonnet Express, Inc.,* 489 S.W.2d 279, 280 (Tex.1973), *not* to the status of the injured party. The Wrongful Death Statute creates a statutory cause of action for designated beneficiaries of the injured party. Therefore, Mrs. Witty's claim, in her individual capacity, under the statute was not dependent upon a showing that the child was born alive, but rather on whether the act that caused the injury was wrongful and would have given Mrs. Witty's child the right to sue if it had survived those injuries.[1]

Mrs. Witty's petition sufficiently alleges a viable claim at common law, based on the emotional distress she allegedly suffered as a result of her perception of her child's injury following the accident, and also a viable claim under the Wrongful Death Statute for mental anguish and for the loss of her baby's society and companionship.

The defendant's motion for summary judgment also alleges that Mrs. Witty's claims are barred by the Workers' Compensation Act, Tex.Rev.Civ.Stat.Ann. art. 8306, sec. 3(a) (Vernon Supp.1985), which provides in pertinent part:

> The employees of a subscriber ... shall have no right of action against their employer ... for damages for personal injuries....

Mrs. Witty's petition and her response to the defendant's request for admissions conclusively show that she was injured while working in the regular course of her employment for the defendant at its offices, and that she filed a claim and received worker's compensation benefits in the amount of $546.00, representing lost wages for three weeks following the accident in June and July 1983.

Because the summary judgment record does not affirmatively show that the defendant is a subscriber under the Workers' Compensation Act, it is questionable whether its status as a covered employer is the only inference that may be drawn from the summary judgment proof. *See Puga v. Donna Fruit Co.,* 634 S.W.2d 677 (Tex. 1982); *see also Smith v. Otis Engineering Corp.,* 670 S.W.2d 750, 752 (Tex.App.— Houston [1st Dist.] 1984, no writ). But even assuming that the defendant met its burden in that respect, the summary judgment proof does not conclusively establish that the Workers' Compensation Act constitutes a bar to the assertion of Mrs. Witty's claims.

■ The Workers' Compensation Act would constitute a bar to Mrs. Witty's common-law and statutory claims for damages resulting from her *own* injuries, including any claims based upon emotional disturbances resulting from such injuries. *Paradissis v. Royal Indemnity Co.,* 507 S.W.2d 526 (Tex.1974). But the claims asserted by Mrs. Witty in her individual capacity do not derive from the injuries that she, herself, sustained in the fall, but instead, those claims relate entirely to the injury and loss of her child.

In support of its position that the Workers' Compensation Act bars Mrs. Witty's claims against her employer, the defendant cites *Hedgeman v. Berwind Railway Service Co.,* 512 S.W.2d 827 (Tex.Civ.App.— Houston [14th Dist.] 1974, writ ref'd n.r.e.), and *Grimes v. Jalco, Inc.,* 630 S.W.2d 282

---

1. The concurring and dissenting opinions do not distinguish between the nature of the two statutory actions brought by Mrs. Witty. Mrs. Witty asserts a cause of action for her child's prenatal injuries, which she seeks to recover in her representative capacity under the Texas Survival Statute (article 5525), and in addition, a cause of action, which she asserts in her own right, to recover damages for the loss of her child's society and companionship and for mental anguish, under the Wrongful Death Statute (article 4671). The confusion between these two actions is understandable, because courts and text writers alike have loosely characterized actions for prenatal injuries as "wrongful death actions." Further confusion has been created by general statements to the effect that a right of action under the Wrongful Death Statute exists only where the injured party could have maintained an action for damages had death not ensued. *See, e.g., Leal,* 419 S.W.2d at 821. When the distinction between the two statutes is perceived, it becomes clear that the Texas Supreme Court decision in *Yandell* applies only to the claim asserted by Mrs. Witty in her representative capacity under the Texas Survival Statute (article 5525).

(Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). Both cases are distinguishable on their facts.

In *Hedgeman*, an employee filed a claim for worker's compensation benefits, which the Industrial Accident Board denied on the ground that the claimed disability was not one covered by the Act. The employee then sued to obtain worker's compensation benefits from the compensation carrier, and in the alternative, alleged common law damages from his employer for failure to provide a safe place to work or to provide safety equipment. The insurance carrier confessed judgment as to the worker's compensation liability, and after severance, the trial court proceeded to hear evidence on the common law action. The trial court rendered judgment in favor of the employer, and this decision was affirmed on appeal. The Court of Civil Appeals concluded that the employee's alternative claims were entirely inconsistent, and that having claimed and accepted compensation benefits, the employee was barred by his election of remedies from seeking a common law remedy for the same disability.

In *Grimes*, the employee alleged in his petition that he was either an independent contractor or an employee of the defendant company, and he joined the company along with the compensation carrier as a defendant. This court, in a majority opinion, concluded that the employee had not made an election of remedies by filing a claim and accepting and receiving compensation benefits, because the award of the Industrial Accident Board had been appealed, and no final judgment had been entered. In so doing, this court distinguished *Hedgeman* and similar cases.

■ We have not been referred to any case involving the precise issue presented here, i.e., whether the Workers' Compensation Act bars an employee's common law action for emotional distress and a statutory recovery for loss of society and companionship and for mental anguish, resulting from an injury to a third party victim. Certainly, the act would not constitute a bar to a claim asserted by the third party

victim, even though both the employee and the victim were injured together as the result of the same negligent act in a single transaction. The words "personal injury" as used in article 8306, section 3, refer only to an injury sustained by the employee because of injury to his own body, including any mental anguish resulting therefrom. It would be unreasonable to expand the meaning of such words to include an employee's mental anguish or other loss resulting from some injury inflicted upon a third party. Indeed, it is inconceivable that the legislature intended such a result when it in enacted art. 8306, section 3.

It is this court's holding that the trial court erred in deciding that Mrs. Witty was precluded, as a matter of law, from asserting her individual claims for damages at common law, based on her alleged emotional distress, and under the Wrongful Death Statute, based upon her alleged loss of society and companionship and for her alleged mental anguish. Because the trial court erred in entering judgment on the grounds asserted in the defendant's motion, Mrs. Witty's first two points of error are sustained. It is therefore unnecessary to consider her third point of error.

The judgment of the trial court is reversed, and the cause is remanded for further proceedings.

DUNN, Justice, concurring in part and dissenting in part.

I agree that this cause should be reversed, but not for the reasons set out in Chief Justice Evans' opinion. Unlike Judge Evans, I believe that *Yandell v. Delgado*, 471 S.W.2d 569 (Tex.1971), applies to the Wrongful Death Act, Tex.Rev.Civ.Stat. Ann. art. 4671 et seq. (Vernon Supp.1985) as well as to the Survival Statute, Tex.Rev. Civ.Stat.Ann. art. 5525 (Vernon 1958). *Yandell* serves to deny any cause of action to wrongfully injured children who die before their birth.

Judge Evans refuses to allow Baby Witty a right of action for prenatal injuries because of what he interprets to be the

current state of the law in Texas. Then, he recognizes a right in Baby Witty's mother under the Wrongful Death Act to limited damages "for mental anguish and for the alleged loss of her baby's society and companionship," relying on *Sanchez v. Schindler,* 651 S.W.2d 249 (Tex.1983).

The Wrongful Death Act confers a right of action upon the surviving husband, wife, child, and parents of a decedent who qualifies under the act. *See Landers v. B.F. Goodrich Co.,* 369 S.W.2d 33 (Tex.1963). This right of action exists only where the injured party could have maintained an action for damages had death not ensued. *Leal v. C.C. Pitts Sand & Gravel, Inc.,* 419 S.W.2d 820, 821 (Tex.1967).

The ethereal entry of Baby Witty's mother into the Wrongful Death Act, proposed by Judge Evans, is not supported by the case law. A beneficiary under the Wrongful Death Act cannot acquire a right superior to that which could have been asserted by the decedent. *Kelley v. City of Austin,* 268 S.W.2d 773 (Tex.Civ.App.—Austin 1954, no writ). Entry into the statute by the decedent's mother is inconsistent with Judge Evans' prior statement that the decedent has no cause of action.

Hesitancy in granting a cause of action to Baby Witty must shock the conscience of all fair-minded persons. It is my opinion that our highest tribunal has not had the opportunity to make final disposition of this vital issue and that there is every reason to believe that, given the opportunity, the Texas Supreme Court will choose to follow the majority of jurisdictions and reject the requirement of live birth.

It is unjust, as well as artificial and unreasonable, to condition a right of action for prenatal injuries on whether a fatally injured child is born dead or alive. To slavishly follow the judicially engrafted proposition that an unborn child must be born alive, though it may die a few minutes after birth, is to give new vigor to the revolting common law maxim that "it is more profitable for the defendant to kill the plaintiff than to scratch him." W.

Prosser, Handbook of the Law of Torts 127 (4th ed. 1971).

Contrary to Judge Evans' interpretation of *Yandell,* 471 S.W.2d 569, it is my opinion that the Texas Supreme Court has not directly considered the proposition that the child must be born alive in order to have a right of action for prenatal injuries. In 1967, the Supreme Court expressly reserved that question for later consideration stating, "some authorities do not recognize a cause of action for prenatal injuries unless the fetus is *viable* at the time of injury, and that other authorities do not do so unless the child is *born alive.* These questions are not before us and are reserved." *Leal,* 419 S.W.2d at 822 (emphasis added). (At the time of the *Leal* decision, in which the fetus was both viable at injury and born alive, only Texas and Alabama had failed to accept prenatal injury as a compensable tort.)

In 1971, the question of *"viability* at the time of injury" was presented to our Supreme Court and that court, without opinion, affirmed the Fort Worth Court of Appeals, adopting the Fort Worth court's language as follows:

> We hold that subject, of course, to the proof required in such cases, a cause of action does exist for prenatal injuries sustained at any prenatal stage, *provided the child is born alive and survives.*

*Yandell v. Delgado,* 471 S.W.2d 569, 570 (Tex.1971) (emphasis added).

A careful review of the Fort Worth Court of Appeals' opinion in support of their holding, "provided the child is born alive and survives," can only be viewed as a vestigial appendage from previous cases. In the portion of the opinion that appears to consider the requirement of live birth the court stated:

> the reason for the adoption of a rule favoring the unborn child is stronger when we are dealing with the health of the child and his ability *after birth* to seek his complete happiness and perform his full duty as a citizen and member of society than when we are dealing merely with his property rights.

*Delgado v. Yandell,* 468 S.W.2d 475, 477 (Tex.Civ.App.—Fort Worth 1971). This seems to say that we are not concerned if the wrongdoer kills the child; only, if the child survives, we are concerned about the cost of care.

The Fort Worth Court of Appeals also commented that historically the cases represented a trend toward extending the doctrine that an unborn child will be regarded as in esse *when beneficial to the child,* citing 10 A.L.R.2d 1051, 1071. Examination of the ALR cite finds a statement such as this but with no case cited in support.

In an over-zealous attempt to find precedent for liability at any prenatal stage, the court of appeals selected a 1933 Canadian case, ignoring a United States district court case decided in 1946 that allowed recovery for prenatal injuries without conditioning such recovery on "born alive and survived." *Bonbrest v. Kotz,* 65 F.Supp. 138 (D.D.C.1946). (Discussed *infra.*) Quoting this old, 1933 case, the Fort Worth court of appeals stated in *Yandell:*

> However, the holding in *Montreal Tramways v. Leveille,* Can.S.C. 456, (1933) 4 Dom.L.R. 337, appears broad enough to support recovery for prenatal injuries sustained at any prenatal stage provided the injured child was *"born alive and survived. "*

468 S.W.2d at 478 (emphasis added).

With the Canadian opinion as the apparent authority for "born alive and survived," and the factual situation that the court was dealing with, i.e., an injured child *born alive,* the Court of Appeals rejected the requirement of viability and attached the unnecessary proviso, *"provided the child is born alive and survives. "*

In my opinion, the Forth Worth court did not directly address the precise issue before us today since the live birth of the child in that case was not in issue. Baby Witty has, for the first time, presented us with the issue of a child having the ability to survive outside the womb, who was wrongfully injured, and who died of those injuries prior to birth.

An historical examination of the proposition that an unborn child must be "born alive" finds its inception in the lack of common-law precedent, the state of scientific knowledge at the time of the archetypical opinions, and the technical problems of proof that might result in injustice.

The common law generally recognized the *property rights* of the unborn, and protected the unborn under the *criminal law.* In support of this, Blackstone, after declaring the right of personal security to be an absolute right, said:

> The right of personal security consists in a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health, and his reputation. *Life* is the immediate gift of God, a right inherent by nature in every individual; and it begins, in contemplation of law, as soon as an infant is able to stir in the mother's womb. For if a woman is quick with child ... if anyone beat her, whereby the child dieth in her body and she is delivered of a dead child; this, though not murder, was by the ancient law, homicide or manslaughter....

1 W. Blackstone, Commentaries * 130.

*Civil* recognition of the rights of unborn victims of personal injury, or death, finds its evolution in the judicial process. At least one English court went so far as to write that "children in the mothers' womb are entitled to all the privileges of other persons," *Thellusson v. Woodford,* 4 Ves. Jun. 227, 31 Eng.Rep. 117 (1798) Butler, J. However, it does not appear that any case of the English common law ever allowed a civil recovery for personal injury to the unborn. *Dietrich v. Inhabitants of Northampton,* 138 Mass. 14, 52 Am.Rep. 242 (1884). This absence of common-law precedent was later used by Justice Holmes in *Dietrich,* as *proof* that the common law had rejected the notion that "unborn children" have any civil duty owed to them, and held that no civil duty was owed to one not yet in being, adopting the view that an unborn child was still a part of the mother. It is interesting to note that Justice Holmes would later write, "it is revolting to have

no better reason for a rule of law than that it was laid down [or, presumably, not laid down] in the time of Henry IV." Holmes, *The Path of the Law*, 10 Harv.L.Rev. 457, 469 (1897).

In 1900, the Illinois Supreme Court decided *Allaire v. St. Luke's Hospital*, and supported the "Dietrich-Walker" conclusion "[t]hat a child before birth is, in fact, a part of the mother," and "there is no precedent for the action [of the unborn child]," commenting that "while it is true that this is nonconclusive that the action may not be maintained ... [since] similar circumstances must have before occurred, it is entitled to great weight" citing *Walker v. Railway Co.*, 28 LR 69 (1891), evidencing that the majority was greatly influenced by the absence of any common-law authority. 184 Ill. 359, 56 N.E. 638 (1900).

Justice Carrol C. Boggs, dissenting in *Allaire*, responded to that argument by referring to Lord Mansfield's statement that, "[t]he law of England would be an absurd science were it founded upon precedents only." 56 N.E. at 640, quoting 1 Kent Comm. 477. He further reasoned that "new and peculiar cases must also arise from time to time, for which the court must find the governing principle, and these may either be referred to some principle previously declared, or to some one which now, for the first time, there is occasion to apply." *Id.* Justice Boggs characterized the majority's reliance on the lack of precedent as an attempt to avoid a novel question of law, and further observed that the presumption that an unborn child is no more than a portion of the mother, especially after viability, ignores proven medical fact. Justice Boggs used "born alive" as a device to prove that the child in *Allaire* was alive at the time of the prenatal injury and was not, in fact, a part of its mother. He reasoned in his opinion that "the argument that there can be no certainty that an unborn child is dead or alive when an injury is inflicted upon the mother is answered by the declaration that *the plaintiff was born alive, and is a living human being.*" (emphasis added). "Born alive" was necessary at a time when medi-

cal science was not sufficiently advanced to determine the status of a child in the womb. In applying Judge Boggs' reasoning to the present case, "born alive" is unnecessary. The sonogram performed a few hours after the injury showed that Baby Witty was alive. Six days later, another sonogram showed that Baby Witty had died.

In Texas, *Magnolia Coca Cola Bottling v. Jordan*, 124 Tex. 347, 78 S.W.2d 944 (1935), became the landmark case in rejecting recovery for prenatal injuries, supporting the majority in *Allaire*.

Finally, 60 years after *Dietrich*, in *Bonbrest v. Kotz*, 65 F.Supp. 138 (D.D.C.1946), a federal district court broke the hold that the Dietrich Rule had over the common law by allowing recovery to an infant plaintiff for injuries sustained when taken from the mother's womb through defendant's alleged professional malpractice. Justice McGuire, in addressing the argument that an unborn child is merely a part of the mother, noted, "[w]hy a 'part' of the mother under the law of negligence and a separate entity and person in that of property and crime? Why a human being, under the civil law, and a non-entity under the common law?" *Id.* at 140–41. "The absence of precedent should afford no refuge to those who by their wrongful act, if such be proved, have invaded the right of an individual." *Id.* at 142. He further dismissed the argument of remoteness of the injury from the wrongful act, carried forward from *Dietrich*, by reasoning that there was adequate proof of direct injury and of viability of the fetus at time of injury.

The *Bonbrest* court did not condition recovery for prenatal injuries upon the plaintiff being "born alive"; indeed, their decision was based upon the *viability* of the child at the time of the injury, and viability was proven by the subsequent live birth of the plaintiff. Since Texas no longer requires viability as a prerequisite to a wrongful death action, the requirement of "live birth," which was of necessity used to prove that the unborn child was living at

the time of the injury, is no more than a relic of a less sophisticated age. As Justice McGuire noted, in this landmark opinion, "the law is presumed to keep pace with the sciences and medical science certainly has made progress since 1884." 65 F.Supp. at 143.

*Bonbrest* was decided in 1946 when there was no reliable test to determine the unborn child's condition; the court stated, "[h]ere, however, we have a *viable child* —one capable of living outside the womb— and *which has demonstrated its capacity to survive by surviving*—are we to say *now* it has no locus standi in court or elsewhere?" 65 F.Supp. at 140 (emphasis added).

After *Bonbrest*, the "Dietrich Rule," which denied recovery for all prenatal injuries, was reversed so rapidly that one writer observed, "[s]eldom has there been such a rapid and overwhelming reversal of firmly established authority as in the trend toward allowing recovery for prenatal injuries to a viable infant." Keeton, *Creative Continuity in the Law of Torts*, 75 Harv. L.Rev. 463, 484-85 (1962).

The term "born alive," as used in *Bonbrest*, and in the dissent in *Allaire*, is therefore only a rebuttal to arguments that it is impossible to say whether the unborn child was alive at the time the injury occurred. Following *Bonbrest*, the plaintiff's requirements of being *viable, injured,* and *born alive* (the fact situation in *Bonbrest*) became adopted by the majority of the courts as a prerequisite to this cause of action. A review of the roots of viability reveals that it was the *Dietrich* court that first established viability, i.e., "capability of living." The first state to reject the need for viability was New York in *Kelly v. Gregory*, 282 A.D. 542, 125 N.Y.S.2d 696 (1953), reasoning that one can affect another individual's life, for which that individual should receive compensation, and rejecting viability in favor of a biological test that recognized "the moment of biological separability" as being the moment of conception, and holding that an injury received by a an unborn child at any time after concep-

tion is actionable by a surviving infant who can prove both actual and proximate causation. "Whether viable or not at the time of the injury, the child sustains the same harm after birth and, therefore, should be given the same opportunity for redress." *Smith v. Brennan,* 31 N.J. 353, 157 A.2d 497, 504 (1960).

In 1967, the Texas Supreme Court recognized *Bonbrest,* overruled their 1935 ruling in *Magnolia Coca Cola Bottling Co.,* and stated, "a right of action exists under the Wrongful Death Statute only where the injured party could have maintained an action for damages had death not ensued.... So the question is whether *this "viable" infant "born alive"* would have had a cause of action against Respondents had she survived. (emphasis added). We hold in the affirmative...." *Leal,* 419 S.W.2d at 821. In *Leal,* the court was faced with a viable infant that was born alive, and so tailored their opinion—expressly reserving the questions of "viability" and "born alive."

Then, in 1971, the Texas Supreme Court joined the trend and did away with the need for viability at the time of injury in the case of *Yandell v. Delgado,* 471 S.W.2d 569 (Tex.1971). It is interesting to note, at this point, that the plaintiff in *Yandell* was *not viable* at the time the injuries occurred, but was *born alive*. As of this date, the term "born alive" persists in Texas because our Supreme Court has never been presented with the appropriate fact situation to directly address the issue. We are now faced with a case specifically turning on the live birth requirement.

The central issue now is whether live birth should be a requirement for a cause of action based upon prenatal injury to a child. The courts are split. The majority of the jurisdictions that have considered the question have ruled that "live birth" should be rejected as a prerequisite, some calling the requirement of live birth a living anachronism, and others illustrating the incongruity of such a requirement. "[I]f the trauma is severe enough to kill the child, then there could be no recovery;

but if less serious, allowing the child to survive, there might be recovery. Again, if the fatality was immediate, the suit could not prevail, but if the death was protracted by a few hours, even minutes, beyond birth, the claim could succeed. Practically, it would mean that the graver the harm the better the chance of immunity." *Todd v. Sandidge Construction Co.,* 341 F.2d 75, 77 (4th Cir.1964). Other courts argue that the requirement of live birth is a legal throwback which ignores proven medical fact. As of 1984, only five jurisdictions that have considered the question of "live birth" have denied a cause of action. 84 A.L.R.3d 411 (Supp.1984).

The jurisdictions that retain the live birth requirement defend it with arguments relating to fears of fraud and double recovery, legislative prohibitions against considering an unborn child to be a "person" within the meaning of the applicable wrongful death statute, lack of duty, and public policy considerations.

Fear that fraudulent claims will overwhelm the courts if this cause of action is allowed "should have no weight to prevent legitimate claims from being heard, for fraud can be dealt with in this class of cases, just as in others, and the detection and the elimination of faked contentions present no novel questions for judicial bodies." *Amann v. Faidy,* 415 Ill. 422, 114 N.E.2d 412 (1953), overruling *Allaire v. St. Luke's Hospital, supra.*

The Texas Wrongful Death Act does not specifically define "person," and therefore, the courts are left to construe its meaning without guidance from the legislature. The legislature has attempted to amend the Texas Wrongful Death Act to read, in pertinent part, "the term 'person' as used in this article includes an unborn child at any state of its biological development from the time of its conception throughout pregnancy until its live birth." Senate Bill 668 did not pass.[1] However, as Justice Spears so aptly stated, "[T]his court should not be bound by the prior legislative inaction in an area like tort law which has traditionally been developed primarily through the judicial process." *Sanchez,* 651 S.W.2d at 252.

Justice Cadena addressed the issue of "lack of duty" in his dissenting opinion in *Leal v. C.C. Pitts Sand & Gravel, Inc.,* 413 S.W.2d 825, 830, n. 18 (Tex.Civ.App.—San Antonio (1967):

It is true that the existence of a duty, and the breach of such duty, constitute the foundation of liability in negligence law. But this does not compel the conclusion that the person to whom the duty is owed must be known or even knowable.... The statement that there was "no duty" begs the essential question—whether the interests of the plaintiff are entitled to legal protection against defendant's conduct.

The Texas Supreme Court reversed the majority opinion in *Leal,* and cited Justice Cadena's dissent with approval in recognizing a right of action for prenatal injuries.

A plaintiff should not be denied a substantive right simply because necessary proof may be difficult. One Texas court noted, "Even the dice shooter who is faced with the uneviable task of rolling a ten has the opportunity to try; no one snatches the dice from his hand." *Terrill v. Garcia,* 496 S.W.2d 124 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.) (Cadena, J., dissenting). The argument of a potentially inadequate recovery should no longer be used to preclude the right of a stillborn child to a cause of action for prenatal injuries.

States such as Texas, which have abandoned the requirement of viability at the time of injury as a prerequisite to recovery for prenatal injury should, when the opportunity presents itself, also abandon the requirement of live birth where an unborn child is injured, but dies prior to birth. As Chief Justice Stone so profoundly observed: "If our appraisals are mechanical and superficial, the law which they generate will likewise be mechanical and superficial, to become at last but a dry and sterile

---

1. Morrison, *Torts Involving the Unborn—A Limited Cosmology,* 31 Baylor L.Rev. 131, 148 n. 112 (1979). I wish to acknowledge the great help that I received in my research from this article.

formalism." *Common Law in the United States,* 50 Harv.L.Rev. 3 (1936–7).

I urge that we abandon the anachronistic judicial requirement of "live birth," and allow Baby Witty a cause of action for prenatal injuries. Texas was next to last among the states of our nation to accept prenatal injury as a compensable tort. *See Leal,* 419 S.W.2d at 820. Hopefully, we will not choose the penultimate position again. The great State of Texas should take its place among the majority of jurisdictions who have already granted rights to children like Baby Witty under their respective statutes.

COHEN, Justice, dissenting.

I agree with Chief Justice Evans that, under the rule in *Yandell v. Delgado,* the birth and survival of a child is required to support a cause of action for prenatal injuries. Texas is not alone in this requirement. *See generally* Annot., 84 A.L.R.3d 411 (1978); Annot., 15 A.L.R.3d 992 (1967).

However, I disagree with his conclusion that Mrs. Witty's cause of action is not barred by the Workers' Compensation Act. Appellant argues that Texas should recognize a cause of action against an employer for the employee's emotional distress resulting from the prenatal injuries and death of a fetus, despite the fact that the employee has received worker's compensation benefits for her personal injuries incurred in the same incident.

The statute does not permit such a recovery. Appellant's right of recovery against her employer for this injury, and the mental anguish, loss of familial relations and emotional distress caused by it, is limited to benefits under the Workers' Compensation Act, which she claimed and received, it having been judicially admitted by all that she was an employee and that her injury occurred in the course and scope of employment. Tex.Rev.Civ.Stat.Ann. art. 8306, sec. 3(a) (Vernon Supp.1985). *See also Hedgeman v. Berwind Railway Service Co.,* 512 S.W.2d 827 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.). In

my opinion, the second point of error should be overruled.

In her third point of error, appellant asserts that the motion for summary judgment did not attack her claim for property damage resulting from the destruction of her property, to wit, the fetus. Appellee has not specifically mentioned the property damage claim in its brief and did not specifically mention the property damage claim in its motion for summary judgment.

The summary judgment motion stated: Defendant is entitled to summary judgment in its favor, because, as a matter of law, this uncontradicted summary judgment evidence establishes: 1) ... 2) the absence of the following element of plaintiff's cause of action: that plaintiff, Baby Witty, was born alive....

A cause of action exists for prenatal injuries sustained at any prenatal stage if and only if the child is born alive and survives. *Leal v. C.C. Pitts Sand & Gravel Company, Inc.,* 419 S.W.2d 820 (Tex.1967); *Yandell v. Delgado,* 471 S.W.2d 569 (Tex.1971).

No summary judgment evidence was offered by appellant, and she has cited no authority supporting a claim for property damage in these circumstances. The undisputed summary judgment evidence was that the fetus was not alive when it was separated from appellant.

*Yandell v. Delgado* supports the District Court's judgment that the appellant take nothing on her claim for property damage. The Supreme Court held that "a cause of action" exists for prenatal injuries provided the child is born alive and survives. 471 S.W.2d at 570. In the absence of live birth and survival, there is not merely no claim for personal injuries; there is no "cause of action". Although appellant sought several different kinds of damages, she alleged only one cause of action, that arising from injuries to the fetus. Where there is no cause of action for prenatal injuries, as in the instant case, there can be no recovery of any kind of damages, including property damages. Therefore, I would overrule the third point of error.

Being convinced that the judgment should be affirmed, I respectfully dissent.

## MOTIONS FOR REHEARING

EVANS, Chief Justice.

In support of its contention that the Workers' Compensation Act constitutes a bar to the plaintiff's common-law action, the defendant cites as additional authority *Bailey v. American General Insurance Co.*, 154 Tex. 430, 279 S.W.2d 315 (1955).

*Bailey* is distinguishable, because in that case, the employee's mental anguish resulted from fear for his *own* safety, not for that of another person.

There, the employee, who suffered only minor injuries when he narrowly missed falling from a high scaffold, claimed worker's compensation benefits for the mental anguish resulting from his fright. The Texas Supreme Court held only that the claimant sustained an "injury" within the meaning of the worker's compensation statute.

We recognize that the Workers' Compensation Act constitutes a bar to Mrs. Witty's claim for damages based upon the emotional distress she allegedly sustained as a result of her *own* injuries. But we hold that the Act does not preclude Mrs. Witty's claims for emotional distress that were related to the injury of her baby. If the law were as the defendant contends, we foresee shockingly unjust results. For example, in a multiple-deaths case, a mother who had just seen her entire family killed due to her employer's negligence, could not recover either common-law or statutory damages for her mental anguish, if the negligent act occurred while she was working in the course and scope of her employment for a worker's compensation subscriber. Surely, as we noted in our original opinion, the legislature did not intend to preclude such relief when it enacted the workers' compensation law.

It is the court's holding, as set forth in the majority opinion, that Mrs. Witty, in her individual capacity, has alleged causes of action at common law and under the wrongful death statute that are not barred by the Texas Workers' Compensation Act. The only difference of opinion between the writers of the majority and the concurring opinions is whether the Texas Supreme Court's decision in *Yandell v. Delgado* precludes Mrs. Witty's damages claim, asserted on behalf of her unborn child, for her child's prenatal pain and suffering, his funeral and burial expenses, and any other damages that she might be entitled to recover as her deceased child's representative. In this respect, the majority does not consider the viability of the injured child to be an issue.

We have considered all arguments advanced by the plaintiff and the defendant in their respective motions for rehearing, and all are overruled.

DUNN, J., concurs and dissents.

COHEN, J., dissents.