792 P.2d 758

TWIN CITY FIRE INSURANCE
COMPANY, an Indiana
corporation, Petitioner,

v.

SUPERIOR COURT OF the STATE OF
ARIZONA In and For the COUNTY OF
MARICOPA; Honorable Susan R. Bolton, a Judge thereof; Employers Insurance of Wausau, a Wisconsin corporation; the Tanner Companies, an Arizona corporation, Respondents/Real
Parties In Interest.

No. CV–89–0353–SA.

Supreme Court of Arizona,
In Banc.

May 29, 1990.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by John H. Westover, Phoenix, and Peter Akmajian, Tucson, for petitioner.

Browder & Kenney, P.C. by Robert W. Browder, and Robbins and Green, P.A. by Robert H. Green, Phoenix, for respondents/real parties in interest.

OPINION

CAMERON, Justice.

I.  JURISDICTION AND ISSUE

Twin City Fire Insurance Company (Twin City) petitioned this court to accept jurisdiction of a special action filed directly from the superior court.  We granted jurisdiction in this case, and in *Hartford Accident & Indemnity Co. v. Aetna Casualty & Surety Co.*, 164 Ariz. 286, 792 P.2d 749 (1990) to determine what duty, if any, a primary insurer owes an excess insurer with respect to accepting settlement offers.  We granted jurisdiction pursuant to Rules 4(a) and 7(a) of the Arizona Rules of Procedure for Special Actions, 17B A.R.S.  We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3).

II.  FACTS

This case arises out of previous litigation entitled *Camargo v. The Tanner Companies*, Pima County Superior Court, Civil Cause No. 235764.  In that case, Camargo sued Tanner for personal injuries.  Employers Insurance of Wausau (Wausau) was Tanner's primary insurer with policy limits of $600,000, including a $50,000 deductible payable by Tanner.  Twin City was Tanner's excess insurance carrier providing coverage for Tanner in the amount of $15,000,000 above Wausau's limits.  Wausau set a $5000 reserve on the case, which amount was never altered.  Wausau defended Tanner and a $991,235 verdict was rendered.  The Camargo case was settled by way of a structured payment in

which Twin City paid $238,817.81 and Wausau paid $596,569.27.

Twin City sued Wausau and Tanner alleging that a duty of good faith and fair dealing was owed to Twin City under both an equitable subrogation theory and a direct duty theory. The trial court granted Wausau's motion to dismiss on the issue of a direct duty, but allowed Twin City to proceed against Wausau on the theory of equitable subrogation. Wausau does not contest Twin City's right to pursue a claim under an equitable subrogation theory. Twin City petitioned this court for relief seeking reversal of the trial court's dismissal of its claim based on a direct duty.

## III. DISCUSSION

We have decided this day, in *Hartford*, that under the doctrine of equitable subrogation, a primary insurance carrier owes an excess insurance carrier a duty of good faith and fair dealing in accepting settlement offers within policy limits. Under equitable subrogation, the excess carrier steps into the shoes of the insured and gains all the rights of the insured. *Id.* In this case, we are asked to go a step further and hold that a primary insurance carrier, independent of its obligation under the doctrine of equitable subrogation, owes a direct duty of good faith and fair dealing to an excess insurance carrier. We decline to do so.

One of the first cases to recognize a direct duty was *Hartford Accident & Indemnity Co. v. Michigan Mutual Insurance Co.*, 93 A.D.2d 337, 462 N.Y.S.2d 175 (App.Div.1983). In that case, a workman was injured while working for a painting contractor (DeFoe) and its subsidiary (L.A.D.). The workman was also employed by D.A.L., another DeFoe subsidiary. All three entities carried primary insurance with Michigan Mutual and excess insurance with Hartford. The workman sued only DeFoe and L.A.D. for his injuries. Michigan Mutual defended DeFoe and L.A.D. but did not try to join D.A.L. as a third-party defendant. Michigan Mutual's defense of D.A.L. presumably would have increased its liability, and decreased the excess carri-

er's contribution toward settlement. Hartford, the excess carrier, claimed that Michigan Mutual's failure to name D.A.L. as a third-party defendant was bad faith. The Appellate Division of the New York Supreme Court held that the primary carrier owes the same obligation to the excess carrier as it owes its own insured:

> As primary insurer, it acts as a fiduciary and is held to an exacting standard of utmost good faith. Any such right of action arises as a result of the independent and direct duty to the excess insurer and is not dependent upon equitable principles of subrogation.

*Id.* at 342, 462 N.Y.S.2d at 178 (citation omitted).

In another direct duty case, an insured and primary insurer colluded and wrongfully allocated certain losses to one policy year in order to exhaust the primary insurer's policy limits for that year and bring excess insurance coverage into play. *Kaiser Found. Hosp. v. North Star Reinsurance Corp.*, 90 Cal.App.3d 786, 153 Cal.Rptr. 678 (1979). The California Court of Appeals held that both the primary insurer and the insured owe the excess insurer a direct duty of good faith and fair dealing. *Id.* at 792, 153 Cal.Rptr. at 682.

In both *Michigan Mutual* and *Kaiser*, the courts recognized a direct duty to the excess carrier because equitable subrogation failed to adequately protect the excess insurer's interests.

We do not believe the direct duty theory should be applied to the facts in this case for two reasons. First, in this case, the excess carrier has an adequate remedy under the doctrine of equitable subrogation. Admittedly, there may be times when equitable subrogation is not an adequate remedy for the excess carrier. Under equitable subrogation, an excess insurer, as subrogee of the insured, has no greater rights than its subrogor. *See Employers Mut. Liab. Ins. Co. v. Robert E. McKee Gen. Contractors, Inc.*, 16 Ariz.App. 77, 491 P.2d 27 (1971) (because subcontractor-insured had no claim against general contractor, neither did its insurer-subrogee). Thus, recovery by the excess insurer may

be barred in the event of wrongful conduct of the insured. *See* 8B J. Appleman, *Insurance Law & Practice* § 4941 (1981). If the insured fails to cooperate with the primary insurer, the primary insurer may assert this as a defense against the insured or its subrogee. *See generally* Butler & Potter, *The Primary Carrier Caught in the Middle With Bad Faith Exposure to its Insureds, Excess Carriers and Reinsurers,* 24 Tort & Ins.L.J. 118, 124 (1988).

In the instant case, because there were no allegations of fraud or collusion on the part of the insured (Tanner), the primary insurer, Wausau, had no defenses to assert against Twin City that would limit Twin City's recovery under equitable subrogation. The insured's conduct was not an obstacle to Twin City's right to pursue a claim for bad faith under an equitable subrogation theory.

Second, we believe an excess insurance carrier can protect itself in its contract with the insured.[1] For instance, an excess insurer can provide in its contract that it may control the defense whenever potential for excess liability exists. In addition, an excess insurer can require notice of all lawsuits filed against the insured or at least all lawsuits requesting either no set amount of damages or damages in excess of primary limits. An excess insurer can also reserve to itself the right to approve all settlement offers. We agree with the California Supreme Court on this point:

> If an excess carrier wishes to insulate itself from liability for an insured's failure to accept what it deems to be a reasonable settlement offer, it may do so by appropriate language in the policy....

*Commercial Union Assurance Co. v. Safeway Stores, Inc.,* 26 Cal.3d 912, 921, 610 P.2d 1038, 1043, 164 Cal.Rptr. 709, 714 (1980).

### IV. CONCLUSION

We believe that under the facts of this case, the primary insurer does not owe the excess insurer a direct duty with respect to settlement negotiations. *See Laper v. Board of Comm'rs,* 523 So.2d 926 (La.Ct. App.1988) (primary insurer does not owe excess insurer a direct duty of good faith in settling claims; duty to defend flows from the primary insurer to the insured and not to the excess insurer). The primary insurer's duty of good faith requires it to give only the insured's interests equal consideration when an offer to settle is made. *See Farmers Ins. Exch. v. Henderson,* 82 Ariz. 335, 313 P.2d 404 (1957). Claims for breach of this duty must be asserted by the insured, or one who derives their rights from the insured. We decline in this case and at this time to recognize a direct duty running from the primary insurer to the excess insurer.

Special action relief denied.

GORDON, C.J., FELDMAN, V.C.J., and MOELLER and CORCORAN, JJ.

---

1. For example, the Tanner–Twin City policy required Tanner to provide written notice to Twin City "[w]henever it appears that an occurrence is likely to involve payment under this policy...."