**AMERICAN CENTENNIAL INSUR-ANCE COMPANY and First State Insurance Company, Appellants,**

v.

**CANAL INSURANCE COMPANY; Talbert, Giessel, Stone and Lyman; Giessel, Stone, Barker and Lyman; Henry P. Giessel; and Richard S. Joseph, Appellees.**

No. 01–89–01138–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 9, 1991.

Rehearing Overruled May 30, 1991.

**248**

Before DUNN, SAM BASS and WILSON, JJ.

## OPINION ON MOTION FOR REHEARING

DUNN, Justice.

We deny the motion for rehearing of the appellee, Canal Insurance Company ("Canal"). We withdraw our opinion of April 4, 1991, and we substitute the following opinion.

The appellants, First State Insurance Company ("First State") and American Centennial Insurance Company ("American"), appeal the take-nothing summary judgment entered in favor of the appellees, Canal; Talbert, Giessel, Stone and Lyman; Giessel, Stone, Barker and Lyman (collectively referred to as "law firm"); Henry P. Giessel; and Richard S. Joseph.

On May 15, 1982, Glenda Ray Russell rented a car from General Rent–A–Car International, Inc. ("General"). On May 20, 1982, Russell, her sister, Linda McDonald, and McDonald's son, Matthew, were riding in the car when they were involved in an accident. Russell and Linda McDonald died as a result of the injuries they received in the accident.

At the time of the accident, General was covered by three insurance policies. Canal insured General to $100,000; First State insured from $100,000 to $1 million, and American insured from $1 million to $4 million. Canal had the right and obligation to defend General in any lawsuit.

As a result of the accident, suit was filed against General seeking damages for personal injury, wrongful death, and survivorship (the "McDonald case"). Canal investigated and defended the suit, hiring the law firm to represent General. The law firm assigned Joseph as lead counsel on the case.

In September 1984, a request for admissions asked General to admit that a tire on the car had blown out because it was defective and that the blow out caused the accident. On October 9, 1984, Joseph, on behalf of General, admitted the fact. Furthermore, Joseph admitted that the defective tire was unreasonably dangerous and created an unreasonable risk of harm to its user. At that time, no depositions had been taken.

Fifteen depositions were taken from October 1984, to January 20, 1986, and Joseph spoke to two new experts on behalf of General. As a result, Joseph's opinion of the cause of the accident changed; he no longer believed it was caused by a blowout; instead, he believed it was caused by a rear-end collision.

In July 1985, Joseph filed a motion to withdraw General's answers to requests for admissions. The record contains no order reflecting a ruling on the motion, but Joseph's secretary told Clifford A. Lawrence, Jr., First State's attorney, that the trial court denied the motion because no evidence supported a withdrawal.

The plaintiffs in the McDonald case non-suited all defendants except General and filed a motion for summary judgment based on General's answers to the requests for admissions. After the motion for summary judgment was filed, Joseph filed another motion to withdraw General's answers to requests for admissions. Joseph's motion was set for hearing on January 27, 1986; the motion for summary judgment was also set for hearing on January 27, 1986. Trial on the case was set for February 4, 1986.

On December 17, 1985, American hired Kyle Wheelus, Jr. to investigate the handling of the McDonald case. On January 8, 1986, First State retained Lawrence to investigate the handling of the case.

Lawrence and Wheelus jointly prepared a memorandum on January 17, 1986; the memorandum was titled "Negligent Handling Problems." The memorandum outlined six problems Canal had in handling the McDonald case, including delay in tendering policy limits and inadequately advising American and First State; in addition, the memorandum outlined ten problems the law firm, Giessel, and Joseph had in handling the case, including answering requests for admissions in a way that admitted liability. Lawrence testified, during his deposition, that when the memorandum was prepared, he had determined that the McDonald case could not be successfully defended at trial. Similarly, Wheelus testified, during his deposition, that by January 17, 1986, he had formed the opinion that the law firm had negligently handled the McDonald case.

On January 22, 1986, a meeting was held at the office of Robert Becker, corporate counsel for General. Joseph, Wheelus, Lawrence, and executives of American, First State, and Canal also attended the meeting. Becker demanded Canal, American, and First State tender their policy limits to settle the McDonald case; he felt that a verdict in excess of the $4 million insurance coverage would force General into bankruptcy. First State and American demanded Canal settle the case with its own funds; Canal refused.

On January 23, 1986, First State and American reached a tentative agreement with the plaintiffs in the McDonald suit; the suit was to be settled for $3.7 million. The agreement was formalized, and a judgment was signed on February 3, 1986.

On January 21, 1988, First State and American filed suit against Canal, the law firm, Giessel, and Joseph. First State and American alleged that in handling the McDonald case, Canal, the law firm, Giessel, and Joseph:

(1) breached their duties of good faith and fair dealing;

(2) were negligent;

(3) were grossly negligent;

(4) violated the Deceptive Trade Practices–Consumer Protection Act, TEX.BUS. & COM.CODE ANN. § 17.41 (Vernon 1987), ("DTPA"); and

(5) violated TEX.INS.CODE ANN. art. 21.21 (Vernon 1981).

The law firm, Giessel, Joseph, and Canal filed motions for summary judgment claiming that all causes of action were barred by the two-year statute of limitations. They claimed First State and American had actual knowledge of the actions that formed the basis of the causes of action on January 17, 1986, but did not file suit until January 21, 1988, more than two years after the cause of action accrued. In addition, the law firm, Giessel, Joseph, and Canal claimed First State and American had no cause of action for breach of the duties of good faith and fair dealing and to act as a reasonable and prudent defense attorney because neither Canal, the law firm, Giessel, nor Joseph owed any such duties to First State or American.

The trial court granted the motions for summary judgment. The court ordered First State and American take nothing from Canal, the law firm, Giessel, and Joseph.

■ In reviewing the grant of a motion for summary judgment, this Court will take all evidence favorable to the nonmovant as true. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986); *Goldberg v. United States Shoe Corp.*, 775 S.W.2d 751,

752 (Tex.App.—Houston [1st Dist.] 1989, writ denied). Every reasonable inference will be indulged in favor of the nonmovant, and any reasonable doubt will be resolved in its favor. *Continental Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex.1988); *Goldberg*, 775 S.W.2d at 752. Summary judgment is proper for a defendant if its summary judgment proof establishes, as a matter of law, that there exists no genuine issue of material fact concerning one or more of the essential elements of the plaintiff's cause of action. *Goldberg*, 775 S.W.2d at 752. Summary judgment is also proper for a defendant if it conclusively establishes all elements of its affirmative defense as a matter of law. *Munoz v. Gulf Oil Co.*, 693 S.W.2d 372, 373 (Tex.1984) (quoting *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex.1979)). The movant has the burden of showing there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *MMP*, 710 S.W.2d at 60; *Goldberg*, 775 S.W.2d at 752.

## EQUITABLE SUBROGATION

The primary question presented by this case is whether, under Texas law, an excess carrier can maintain a cause of action against a primary carrier for tortious conduct in handling a claim.

In their first point of error, First State and American contend that the trial court erred in holding that an excess insurance carrier has no remedy against a primary carrier and its agents for tortious conduct in the handling of a claim. In their second point of error, they contend that the trial court erred in granting summary judgment because an issue of fact existed concerning whether Canal and its agents committed tortious conduct in the investigation and defense of the McDonald case.

■ Texas law recognizes that an insurer has a duty to the insured to settle a lawsuit, if a prudent person in the exercise of ordinary care would do so. *G.A. Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544, 547 (Tex.Comm'n App. 1929, holding approved). Under the *Stowers* doctrine, an insurer is under a duty to

act, in the handling of the lawsuit against the insured, as an ordinarily prudent person would act in the management of his own business. *Id.* If an ordinarily prudent person would have settled the lawsuit, and the insurer failed or refused to do so, it is liable to the insured for the amount of damages eventually recovered in excess of policy limits. *Id.* The duty of an insurer extends to investigation of the claim, preparation for defense of the lawsuit, trial of the case, and reasonable attempts to settle. *Ranger County Mut. Ins. Co. v. Guin,* 723 S.W.2d 656, 659 (Tex.1987). Therefore, under the *Stowers* doctrine, an insurer can be liable for tortious conduct in handling a claim.

■ No court in Texas has addressed whether an excess carrier can sue a primary carrier for breach of the *Stowers* duty.[1] However, courts in other jurisdictions have allowed an excess carrier to pursue such a cause of action. The courts have allowed a cause of action under three theories: the theory of direct duty,[2] the doctrine of triangular reciprocity,[3] and the doctrine of equitable subrogation.[4]

1. Contrary to the dissent's assertions, we do not fail to follow "a policy of judicial self-restraint" by addressing whether such a cause of action exists in Texas. No Texas court, including the Texas Supreme Court, has yet addressed whether such a cause of action exists. In contrast, the cases upon which the dissent relies involved areas of law already addressed by the Texas Supreme Court and well settled in Texas law. *See Lumpkin v. H & C Communications, Inc.,* 755 S.W.2d 538, 540 (Tex.App.—Houston [1st Dist.] 1988, writ denied) (intermediate appellate court will not carve out exception to "at-will" employment rule, which is well settled in Texas law); *Witty v. American Gen. Capital Distrib., Inc.,* 697 S.W.2d 636, 639 (Tex.App.—Houston [1st Dist.] 1985) (intermediate court of appeals adopts opinion of Texas Supreme Court, which recognized cause of action for prenatal injuries if child was born alive, but not if child was not born alive), *rev'd in part, aff'd in part,* 727 S.W.2d 503 (Tex.1987); *Molder v. Southwestern Bell Tel. Co.,* 665 S.W.2d 175, 177 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.) (court of appeals would not depart from long line of Texas cases upholding "at-will" rule in employment); *Watson v. Zep Mfg. Co.,* 582 S.W.2d 178, 180 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.) (duty of intermediate court of appeals is to follow law as previously declared and applied by courts in the state). The present case is a case of *first impression; no* court in Texas, including the Texas Supreme Court, has decided whether an excess carrier has a cause of action against a primary carrier for breach of the *Stowers* duty.

2. *See, e.g., American Centennial Ins. Co. v. American Home Assurance Co.,* 729 F.Supp. 1228, 1232 (N.D.Ill.1990); *National Union Fire Ins. v. Liberty Mut. Ins. Co.,* 696 F.Supp 1099, 1101 (E.D.La.1988); *Argonaut Ins. Co., Inc. v. Hartford Accident & Indem. Ins. Co.,* 687 F.Supp 911, 914 (S.D.N.Y.1988); *Bohn v. Sentry Ins. Co.,* 681 F.Supp. 357, 362 (E.D.La.1988), *aff'd,* 868 F.2d 1269 (5th Cir.1989); *Estate of Penn v. Amalgamated Gen. Agencies,* 148 N.J.Super. 419, 372 A.2d 1124, 1127 (Ct.App.Div.1977); *Hartford Accident & Indem. Co. v. Michigan Mut. Ins. Co.,* 93 A.D.2d 337, 462 N.Y.S.2d 175, 178 (App.Div. 1983), *aff'd,* 61 N.Y.2d 569, 463 N.E.2d 608, 475 N.Y.S.2d 267 (1984). *But see, e.g. Pacific Employers Ins. Co. v. United Gen. Ins. Co.,* 664 F.Supp. 1022, 1024 (W.D.La.1987); *Great Southwest Fire Ins. Co. v. CNA Ins. Cos.,* 547 So.2d 1339, 1346 (La.Ct.App.1989); *Allstate Ins. Co. v. Reserve Ins. Co.,* 116 N.H. 806, 373 A.2d 339, 340 (1977); *accord Twin City Fire Ins. Co. v. Superior Court,* 164 Ariz. 295, 296, 792 P.2d 758, 759 (1990) (direct duty theory should not be applied since excess carrier had adequate remedy under doctrine of equitable subrogation); *Laper v. Board of Comm'rs,* 523 So.2d 926, 928 (La.Ct. App.1988) (insurer owes duty to defend to insured; insurer owes no such duty to excess insurer) (Plotkin, J., dissenting).

3. *See, e.g. Transit Casualty Co. v. Spink Corp.,* 94 Cal.App.3d 124, 132–35, 156 Cal.Rptr. 360, 365–67 (Ct.App.1979).

4. *See, e.g. Certain Underwriters of Lloyd's v. General Accident Ins. Co. of Am.,* 909 F.2d 228, 233 (7th Cir.1990); *United States Fire Ins. Co. v. Royal Ins. Co.* 759 F.2d 306, 309 (3rd Cir.1985); *Valentine v. Aetna Ins. Co.,* 564 F.2d 292, 297–98 (9th Cir.1977); *Vencill v. Continental Casualty Co.,* 433 F.Supp. 1371, 1376 (S.D.W.Va.1977); *Peter v. Travelers Ins. Co.,* 375 F.Supp 1347, 1350–51 (C.D.Cal.1974); *Hartford Accident & Indem. Co. v. Aetna Casualty & Surety Co.,* 164 Ariz. 286, 291, 792 P.2d 749, 754 (1990); *Northwestern Mut. Ins. Co. v. Farmers Ins. Group,* 76 Cal.App.3d 1031, 143 Cal.Rptr. 415, 427 (Ct.App. 1978); *Ranger Ins. Co. v. Travelers Indem. Co.,* 389 So.2d 272, 274–76 (Fla.Dist.Ct.App.1980); *Home Ins. Co. v. North River Ins. Co.,* 192 Ga. App. 551, 385 S.E.2d 736, 740 (Ct.App.1989); *Fireman's Fund Ins. Co. v. Continental Ins. Co.,* 308 Md. 315, 319–21, 519 A.2d 202, 204–205 (1987); *Commercial Union Ins. Co. v. Medical Protective Co.,* 426 Mich. 109, 119, 393 N.W.2d 479, 483 (1986); *Continental Casualty Co. v. Reserve Ins. Co.,* 307 Minn. 5, 8, 238 N.W.2d 862, 864 (1976); *Centennial Ins. Co. v. Liberty Mut. Ins. Co.,* 62 Ohio St.2d 221, 404 N.E.2d 759, 762 (1980); *Maine Bonding & Casualty Co. v. Cen-*

We find the cases that allow an excess carrier to maintain a cause of action under the doctrine of equitable subrogation persuasive. Therefore, we hold that an excess carrier is equitably subrogated to an insured's cause of action against the primary carrier for breach of the *Stowers* duty.

■ When an insurer pays a loss under a policy, it becomes equitably subrogated to any cause of action the insured may have against a third party who caused the loss. *Ortiz v. Great Southern Fire & Casualty Ins. Co.*, 587 S.W.2d 818, 820 (Tex.Civ.App.—Amarillo 1979), *rev'd on other grounds*, 597 S.W.2d 342 (Tex.1980); *State Farm Mut. Automobile Ins. Co. v. Elkins*, 451 S.W.2d 528, 530 (Tex.Civ.App.—Tyler 1970, no writ); *International Ins. Co. v. Medical–Professional Bldg.*, 405 S.W.2d 867, 869 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.). The insurer steps into the shoes of the insured and may maintain a cause of action against the third party.

■ The primary carrier's *Stowers* duty arises because of a contract with the insured, and that duty is not reduced merely because of the existence of another contract between the insured and the excess carrier. *Peter*, 375 F.Supp. at 1350. Allowing an excess carrier to enforce the *Stowers* duty does not increase the scope of the primary carrier's duty nor the potential extent of its liability. *Id.; Commercial Union*, 426 Mich. at 118–19, 393 N.W.2d at 483; *Maine Bonding*, 298 Or. at 523, 693 P.2d at 1302; *accord Transit Casualty*, 94 Cal.App.3d at 135, 156 Cal.Rptr. at 367 (primary carrier's conflict of interest with excess carrier is no greater than its conflict of interest with insured with no excess coverage). The duty the primary carrier owes to the excess carrier, through equitable subrogation, is identical to the duty the primary carrier owes its insured. *Peter*, 375 F.Supp. at 1350. The excess carrier will not be able to force the primary carrier to accept any settlement that the primary carrier's duty to the insured would not require it to accept. *Id.* Therefore, allowing an excess carrier to enforce the *Stowers* duty against the primary carrier should have no effect on premiums for primary coverage.

An excess insurance policy is written with the existence of the primary policy in mind. *Maine Bonding*, 298 Or. at 520, 693 P.2d at 1300. The excess carrier's obligation to pay begins where the primary carrier's obligation ends. *Id.* When there is no excess coverage, the insured, in effect, becomes his own excess insurer, and under the *Stowers* doctrine, the primary carrier has a duty to protect him from a judgment in excess of the primary policy limits. *Continental Casualty*, 307 Minn. at 8–9, 238 N.W.2d at 864. If he purchases excess coverage, the insured substitutes the excess carrier for himself. *Id.* at 9, 238 N.W.2d at 864. Consequently, if the primary carrier fails to exercise reasonable care in handling a claim, the excess carrier may be subject to liability, just as an insured with no excess coverage may be subject to personal liability, for an amount in excess of the primary policy limits. *Id.*

Whereas the primary carrier's interests are largely unaffected by the existence or actions of the excess carrier, the excess carrier's interests are very much affected by the actions of the primary carrier. *Peter*, 375 F.Supp. at 1350. As stated in *Continental Casualty*,

> The insured has paid for two distinct types of coverage, undoubtedly at different rates because they involve different amounts and kinds of risks. Primary coverage is designed to cover liability from zero to certain policy limits[;] ... excess coverage is designed to cover liability only after those initial limits are exhausted. When a primary insurer refuses in bad faith to settle, it forces the

*tennial Ins. Co.*, 298 Or. 514, 520, 693 P.2d 1296, 1300 (1985); *accord Insurance Co. of N. Am. v. Medical Protective Co.*, 570 F.Supp. 964, 975 (D.Kan.1983) (excess carrier was entitled to be subrogated to rights of insured under his primary policy); *Home Ins. Co. v. Royal Indem. Co.*, 68 Misc.2d 737, 327 N.Y.S.2d 745, 748 (Sup.

Ct.1972) (when it paid insured's obligation under judgment, excess carrier became equitable subrogee of insured's rights); *cf. Great Southwest Fire Ins. Co. v. CNA Ins. Cos.*, 547 So.2d 1339, 1347 (La.Ct.App.1989) (excess carrier was legally and conventionally subrogated to claim of insured) (Guidry, J., dissenting).

excess insurer making a reasonable settlement to cover both primary and excess liability. Thus, the purposes of the different kinds of coverage and their rating structures are thwarted as the excess insurer bears the full loss and fulfills the primary insurer's duty to the insured as well as its own.

*Continental Casualty*, 307 Minn. at 9–10, 238 N.W.2d at 865 (footnotes omitted). The primary carrier, representing the insured, has the sole right to negotiate settlements; if the primary carrier has no duty to pursue reasonable settlements, the excess carrier faces additional financial liability, which would be reflected in its premiums. *Peter*, 375 F.Supp. at 1350–51; *Continental Casualty*, 307 Minn. at 9–10, 238 N.W.2d at 865; *see also Certain Underwriters*, 909 F.2d at 232 (if primary carrier's duty of good faith disappears with the purchase of excess insurance, the probability of excess judgments increases and premiums for excess insurance would correspondingly increase). Hence, recognizing that an excess carrier has a cause of action against a primary carrier for violation of the *Stowers* duty should stabilize premiums for excess coverage.

In addition, allowing the excess carrier to enforce the primary carrier's *Stowers* duty encourages fair and reasonable settlements by discouraging primary carriers from gambling with excess carriers' money when potential judgments are close to the primary carrier's policy limits. *Commercial Union*, 426 Mich. at 119, 393 N.W.2d at 483; *accord Maine Bonding*, 298 Or. at 523, 693 P.2d at 1302 (relieving a primary insurer of the duty to diligently defend in those cases in which excess coverage exists may give the primary insurer a disincentive to settle); *see also Home Ins. v. North River Ins.*, 385 S.E.2d at 740 (primary carrier would be encouraged to attempt to place financial burden, for claims exceeding primary policy limits, on excess carrier if existence of excess coverage relieves primary carrier of duty to accept reasonable settlement offers). If a settlement offer is at or near the primary carrier's policy limits, the primary carrier has no incentive to accept such an offer. *See Northwestern Mut.*, 143 Cal.Rptr. at 425 (denying recovery to an excess carrier would give the primary carrier a disincentive to settle, particularly when proposed settlement is at, or in excess of, the primary policy limits); *Fireman's Fund*, 308 Md. at 321, 519 A.2d at 205 (if presence of excess carrier relieves primary carrier of duty to settle, primary carrier has no incentive to settle within its policy limits). The primary carrier is exposed to no additional liability by taking a case to trial; even if the eventual judgment is larger than the settlement offer, the primary carrier is only liable up to its policy limits. However, allowing an excess carrier to pursue a cause of action for breach of the *Stowers* duty provides the primary carrier with an incentive to accept reasonable settlement offers at or near its policy limits. *Peter*, 375 F.Supp. at 1351.

Therefore, recognizing that an excess carrier is equitably subrogated to an insured's cause of action against the primary carrier for breach of the *Stowers* duty promotes important public concerns. Recognizing such a cause of action promotes judicial economy by encouraging reasonable settlement; in addition, recognizing such a cause of action promotes stability in rates for excess insurance without destabilizing rates for primary insurance.

Moreover, all cases revealed by our research, which have considered whether an excess carrier has a cause of action under the doctrine of equitable subrogation, have recognized such a cause of action.

The courts that have allowed a cause of action under a direct duty or the related doctrine of triangular reciprocity[5] have done so because the excess carrier could not recover from the primary carrier under the doctrine of equitable subrogation. *See Transit Casualty*, 94 Cal.App.3d at 132, 156 Cal.Rptr. at 365 (excess carrier's cause of action, under equitable subrogation, is defeated by bad faith of insured); *Hart-*

---

5. Under the doctrine of triangular reciprocity, the relationship of the insured, the primary carrier, and the excess carrier creates a three-way reciprocal duty of care in the conduct of settlement negotiations. *Transit Casualty*, 94 Cal.App.3d at 134, 156 Cal.Rptr. at 366.

*ford Accident v. Michigan Mut.*, 462 N.Y. S.2d at 176–77 (excess carrier asserted insured breached its fiduciary duty in settlement of case); *cf. American Centennial*, 729 F.Supp. at 1230 n. 1 (excess carrier did not claim it could recover from primary carrier on theory of equitable subrogation). In contrast, First State and American can pursue their cause of action against Canal under the doctrine of equitable subrogation. Consequently, we do not address whether a primary carrier owes a duty to an excess carrier under the theory of direct duty or under the doctrine of triangular reciprocity. *See Twin City Fire*, 164 Ariz. at 296, 792 P.2d at 759 (since excess carrier has adequate remedy under equitable subrogation, court does not apply direct duty theory).

We find that an excess carrier has a remedy, and can maintain a cause of action, under the doctrine of equitable subrogation, against a primary carrier for tortious conduct in the handling of a claim. First State and American were equitably subrogated to General's cause of action against Canal for breach of the *Stowers* duty.

In addition, an issue of material fact existed as to whether Canal breached the *Stowers* duty. The Texas Supreme Court has extended the *Stowers* duty to investigation of the claim, preparation for defense of the lawsuit, trial of the case, and reasonable attempts to settle. *Ranger County*, 723 S.W.2d at 656. Therefore, even if Canal had no opportunity to settle the McDonald lawsuit within its policy limits of $100,000, it may have breached the *Stowers* duty. *See Ranger County*, 723 S.W.2d at 659 (insurer's duty is not limited to accepting reasonable settlement offers within its policy limits).

We sustain First State's and American's first and second points of error concerning Canal.

The duty imposed by the *Stowers* doctrine applies only to the insurer; it does not apply to the insurer's agents. *See Stowers*, 15 S.W.2d at 547 (if duty of care is breached, *indemnity company* should respond in damages); *Stroman v. Fidelity & Casualty*, 792 S.W.2d 257, 260 (Tex.App.

—Austin 1990, writ denied) (under *Stowers* doctrine, *insurer* may be liable for entire amount of judgment in excess of policy limits); *Becker v. Allstate Ins. Co.*, 678 S.W.2d 561, 561 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (if *insurer* breaches duty of care, *it* can be liable for excess judgment). Therefore, no cause of action exists, under the *Stowers* doctrine, against any party other than the insurer. First State and American had no cause of action against the law firm, Giessel, or Joseph for breach of the *Stowers* duty. We overrule First State's and American's first and second points of error concerning the law firm, Giessel, and Joseph.

## STATUTE OF LIMITATIONS

In their third and fourth points of error, First State and American contend that the trial court erred in granting summary judgment on the basis of the statute of limitations because there was a genuine issue of material fact concerning when the cause of action accrued, and the statute of limitations could not begin to run before a legal injury had been incurred.

As discussed above, First State and American stated a cause of action for breach of the *Stowers* doctrine against Canal. The two-year statute of limitations applies to a cause of action based on the *Stowers* doctrine. *Hernandez v. Great Am. Ins. Co.*, 456 S.W.2d 729, 731 (Tex.Civ. App.—Corpus Christi 1970), *rev'd on other grounds*, 464 S.W.2d 91 (Tex.1971). Thus, a cause of action based on the *Stowers* doctrine must be brought within two years of the day the cause of action accrues. TEX.CIV.PRAC. & REM.CODE ANN. § 16.003(a) (Vernon 1986). A cause of action for breach of the *Stowers* duty accrues when the judgment in the underlying case becomes final; that is, the judgment disposes of all issues and parties in the case, the trial court's power to alter the judgment has ended, and execution on the judgment has not been superseded. *Street v. Honorable Second Court of Appeals*, 756 S.W.2d 299, 301 (Tex.1988). Hence, a cause of action for breach of the *Stowers* duty must

be brought within two years of the day the judgment in the underlying case becomes final.

In the present case, the judgment in the McDonald case was signed on February 3, 1986. The judgment became final on March 5, 1986, 30 days after it was signed. *See* TEX.R.CIV.P. 329b(d) (trial court has plenary power to vacate, modify, correct, or reform judgment for 30 days after the judgment was signed). To avoid the bar of the statute of limitations, First State and American were required to file suit by March 5, 1988, two years after the day the judgment became final. They filed suit on January 21, 1988. Hence, First State's and American's claims against Canal for breach of the *Stowers* duty were not barred by the statute of limitations. We sustain First State's and American's third and fourth points of error concerning their claims against Canal for breach of the *Stowers* duty.

Assuming, without holding, that First State and American had causes of action for negligence, gross negligence, violation of the DTPA, and violation of article 21.21 against Canal, the law firm, Giessel, and Joseph, the causes of action were barred by the applicable statutes of limitations.

 A cause of action for negligence and for gross negligence is governed by the two-year statute of limitations. *Church v. Ortho Diagnostic Sys., Inc.*, 694 S.W.2d 552, 555–56 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *Dotson v. Alamo Funeral Home*, 577 S.W.2d 308, 311 (Tex.Civ.App.—San Antonio 1979, no writ); *Citizens State Bank v. Shapiro*, 575 S.W.2d 375, 386 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). Suit, based on negligence and gross negligence, must be brought within two years of the day the cause of action accrued. TEX.CIV.PRAC. & REM.CODE ANN. § 16.003(a). Generally, a cause of action accrues when facts come into existence that authorize one to seek a judicial remedy. *Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex.1977); *Johnson v. Abbey*, 737 S.W.2d 68, 69 (Tex.App.—Houston [14th Dist.] 1987, no writ). A cause of action for negligence accrues when the duty of ordi-nary care is breached by some act or omission, even though the injury is not immediately apparent, and the plaintiff may be unaware of the cause of action. *See Johnson*, 737 S.W.2d at 69 (cause of action in tort accrues when tort is complete); *Zidell v. Bird*, 692 S.W.2d 550, 554 (Tex.App.—Austin 1985, no writ) (in negligence cases generally, cause of action accrues when duty of ordinary care is breached, even if plaintiff is not aware of his right of action); *Dotson*, 577 S.W.2d at 311 (as a general rule, statute of limitations begins to run on cause of action in tort when duty is breached even though plaintiff is ignorant of his cause of action); *Metal Structures Corp. v. Plain Textiles, Inc.*, 470 S.W.2d 93, 98 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.) (statute of limitations begins to run from commission of negligent act, even if one injured is unaware of negligence). Therefore, a cause of action for negligence and for gross negligence must be brought within two years of the day the duty of ordinary care is breached, even though the injury may not be apparent, and the plaintiff may be unaware of the breach.

 The discovery rule only applies to causes of action that can be characterized as inherently undiscoverable. *Johnson*, 737 S.W.2d at 69. First State's and American's causes of action for negligence and gross negligence against Canal was not inherently undiscoverable. First State and/or American could have discovered Canal's alleged negligence in the handling of the McDonald case by monitoring the case. Hence, the discovery rule does not apply to First State's and American's cause of action for negligence and gross negligence against Canal.

 In the present case, First State and American stated a cause of action for negligence against Canal. Canal's allegedly negligent and/or grossly negligent acts occurred on October 9, 1984, when Joseph filed responses to the requests for admissions. Thus, to avoid the bar of the statute of limitations, First State and American were required to file suit by October 9, 1986, two years after the cause of action accrued. First State and American did not

file suit until January 21, 1988, more than two years after the cause of action for negligence and gross negligence accrued. The cause of action for negligence and gross negligence was barred by the statute of limitations.

 First State's and American's claims for negligence against the law firm, Giessel, and Joseph were claims for legal malpractice. *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex.1989) (op. on reh'g). A cause of action for legal malpractice is also governed by the two-year statute of limitations. *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988). Suit must be filed within two years of the day the cause of action accrued. TEX.CIV.PRAC. & REM. CODE ANN. § 16.003(a). Generally, a cause of action accrues when facts come into existence that authorize one to seek a judicial remedy. *Robinson*, 550 S.W.2d at 19; *Johnson*, 737 S.W.2d at 69. However, the discovery rule applies to a cause of action for legal malpractice, and the statute of limitations does not begin to run until the claimant discovers or should have discovered, through the exercise of reasonable care and diligence, the facts establishing the cause of action. *Willis*, 760 S.W.2d at 646.

 In the present case, First State and American knew of the facts establishing their cause of action for legal malpractice by January 17, 1986. On January 17, 1986, Lawrence and Wheelus drafted a memorandum that outlined the law firm's, Giessel's, and Joseph's problems in handling the McDonald case. By that date, both Lawrence and Wheelus believed the law firm had negligently handled the case, and, as a result, the case could not be successfully defended. On January 17, 1986, Lawrence and Wheelus knew of the facts establishing First State's and American's cause of action for legal malpractice. Lawrence was First State's attorney, and Wheelus was American's attorney. Knowledge acquired by an attorney, during and within the scope of his employment, is imputed to his client. *Gulf Atlantic Life Ins. Co. v. Hurlbut*, 749 S.W.2d 96, 98 (Tex. App.—Dallas 1985, no writ); *Canutillo Indep. School Dist. v. Kennedy*, 673 S.W.2d

407, 409 (Tex.App.—El Paso 1984, writ ref'd n.r.e.). As a result, First State and American should have filed suit no later than January 17, 1988. They filed suit on January 21, 1988, more than two years after they discovered the facts establishing their cause of action. Therefore, their cause of action for legal malpractice was barred by the statute of limitations.

 A cause of action for violation of the DTPA is also governed by a two-year statute of limitations. TEX.BUS. & COM.CODE ANN. § 17.565 (Vernon 1987). However, the discovery rule also applies to a cause of action under the DTPA, and the statute of limitations does not commence until the claimant discovered or, in the exercise of reasonable diligence, should have discovered the false, misleading, or deceptive act or practice. *Id.*

As discussed above, First State and American discovered the allegedly false, misleading, or deceptive act or practice on January 17, 1986. They failed to file suit until January 21, 1988, more than two years after they discovered their cause of action. Therefore, their cause of action for violation of the DTPA was barred by the statute of limitations.

 In addition, a cause of action for violation of article 21.21 is governed by a two-year statute of limitations. TEX.INS. CODE ANN. art. 21.21, § 16(d) (Vernon Supp. 1991). The discovery rule applies to a cause of action for violation of article 21.-21; the statute of limitations does not begin running until "the person bringing the action discovered or, in the exercise of reasonable diligence, should have discovered the occurrence of the ... unfair or deceptive act or practice." *Id.* Since section 16 of article 21.21 was amended in 1985, the holding of this Court in *Gibbs v. Main Bank*, 666 S.W.2d 554, 558 (Tex.App.— Houston [1st Dist.] 1984, no writ), that the four-year statute of limitations is applicable to a cause of action for violation of the Insurance Code, is not controlling.

As discussed above, First State and American discovered the occurrence of the allegedly unfair or deceptive act or practice

on January 17, 1986. They failed to file suit until January 21, 1988, more than two years after they discovered their cause of action. Thus, their cause of action for violation of article 21.21 was barred by the statute of limitations.

The trial court did not err in granting Canal's, the law firm's, Giessel's, and Joseph's motions for summary judgment as to First State's and American's causes of action for negligence, gross negligence, legal malpractice, violation of the DTPA, and violation of article 21.21; the causes of action were barred by the applicable statutes of limitations. We overrule First State's and American's third and fourth points of error as to their causes of action for negligence, gross negligence, legal malpractice, violation of the DTPA, and violation of article 21.21.

We affirm the judgment in its entirety concerning First State's and American's causes of action against the law firm, Giessel, and Joseph. In addition, we affirm the judgment concerning First State's and American's causes of action against Canal for negligence, gross negligence, violation of the DTPA, and violation of article 21.21. We reverse the judgment concerning First State's and American's cause of action against Canal for violation of the *Stowers* duty, and remand the cause to the trial court for further proceedings.

WILSON J., dissents and files an opinion.

WILSON, Justice, dissenting.

My dissenting opinion remains unchanged.

From the portion of the majority opinion that, for the first time in Texas, permits an excess insurance carrier to sue a primary insurance carrier by means of "equitable subrogation" for breach of a *Stowers*[1] duty, I respectfully dissent.

Fundamentally, I believe the majority is mistaken in creating this cause of action without guidance from a higher authority.

Further, I note my disagreement with the *Stowers* analysis used by the majority.

The majority expresses forthrightly that no Texas court has recognized such a cause of action, and then proceeds to weigh alternative methods from other jurisdictions by which such a suit can be maintained. Ultimately, the majority chooses the doctrine of equitable subrogation as a vehicle for permitting the suit, and casts off, apparently as a matter of public policy, what the majority labels the "theory of direct duty" and the "doctrine of triangular reciprocity." For the reasons stated herein, I will not engage the majority in debate over the merits of such a cause of action in the context of "promoting important public concerns."

This Court has frequently stated, in the broad area of recognizing new causes of action, that justice is best served by following a policy of judicial self-restraint. In the context of deciding whether an intermediate court of appeals would recognize a cause of action for the implied covenant of good faith and fair dealing in the employer-employee relationship, this Court recently stated that "an intermediate court is duty-bound to follow the Texas Supreme Court's authoritative expressions of the law and to leave changes in the application of common law rules to that court." *Lumpkin v. H & C Communications, Inc.*, 755 S.W.2d 538, 540 (Tex.App.—Houston [1st Dist.] 1988, writ denied) (citing *Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex.1964), and *Bruno v. Bruno*, 589 S.W.2d 179 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.)). We further stated in *Lumpkin* that "[t]his Court must recognize and apply the Texas Supreme Court's deliberate statement of the law and, by exercising judicial self-restraint, refrain from extending or restricting the scope of the Supreme Court's declaration." *Lumpkin*, 755 S.W.2d at 540; *see also Watson v. Zep Mfg. Co.*, 582 S.W.2d 178, 180 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.).

---

**1.** *G.A. Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544 (Tex.Comm'n App.1929, holding approved).

Citing the same rule, this Court previously refused to recognize a cause of action for damages suffered by a fetus not born alive in *Witty v. American Gen. Capital Distrib., Inc.*, 697 S.W.2d 636, 639 (Tex. App.—Houston [1st Dist.] 1985), *rev'd in part, aff'd in part*, 727 S.W.2d 503 (Tex. 1987). In *Molder v. Southwestern Bell Tel. Co.*, 665 S.W.2d 175, 177 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.), this Court declined to deviate from the "at-will" employment termination rule and "recognize[d] that the legislature is the appropriate agency for effecting a change in policy regarding the employer-employee relationship."

The insurance business is a heavily regulated industry within the state of Texas. The legislature has, by statute, enacted an Insurance Code, which in turn created a State Board of Insurance to administer, through regulation, significant portions of the insurance business in Texas. Thus, the market for the buying and selling of insurance contracts is statutorily restricted in Texas. Generally speaking, the rights, responsibilities, duties, and obligations of buyers and sellers of insurance contracts are defined by the statutes and the common law of Texas, as well as by the contracts themselves.

Administrative agencies are sometimes legislatively created in areas where a need for the accumulation of expert opinion and oversight is perceived. These agencies often serve as the institutional memories of government in a particular field, and gain experience from the daily activities of conducting statutory assignments. The legislature vests the day-to-day business of regulating in these statutory creations, and assumes a more indirect, oversight role as it also monitors and shapes the long-term direction a particular agency may take.

As one reason to support its conclusion to create a new cause of action, the majority states that "recognizing such a cause of action promotes stability in rates for excess insurance without destablizing rates for primary insurance." I do not believe this statement is self-evident, nor do I find it an issue generally justiciable by an intermediate court of appeals, if any court.

The appellants in this case bargained for their position as excess carriers to General. The appellants were in the business of writing such policies, accepting premiums, and assuming the risks of unfavorable results. They contracted with knowledge of the existence of the primary carrier, as well as with knowledge of the rights of the primary carrier under its policy. In my judgment, permitting a new cause of action from wholecloth, without legislative intervention or warning or guidance by supreme court decisions, would tend to create confusion in the industry, and deny the type of risk-reward predictability necessary for appropriate business decision making. Making fundamental changes concerning legal duties between companies in a heavily regulated industry are, in my opinion, not within the mandate or expertise of an intermediate appellate court.

I also disagree with the characterization of this case as a *Stowers* case, at least to the extent it requires a statute of limitations defense to be counted from the day a judgment becomes final. A typical *Stowers* case occurs when an insurance company fails in settling, or attempting to settle, a case when a prudent person in the exercise of ordinary care would have done so, and a resulting judgment is in excess of policy limits. *Stowers*, 15 S.W.2d at 547. The basic principle is that an insurance carrier has a duty to its insured to settle a claim within the policy limits if it would have been prudent to do so.

The set of facts before us is actionable, if it is at all, only by the expansion of the *Stowers* doctrine by the supreme court's holding in *Ranger County Mut. Ins. Co. v. Guin*, 723 S.W.2d 656, 659 (Tex.1987). There, the plaintiffs alleged Ranger was negligent in handling a range of settlement-related matters, in addition to allegations of negligence in the handling, investigation, and ultimate trial of the claim. In the case before us, the appellants alleged some 30 acts of negligence against the appellees. Only two of the 30 touch on any aspect of negligence in the handling of

settlement matters. The appellants state in their own brief that Canal and its agent, Giessel, knew at all times that the damage potential of the case (two fatalities) vastly exceeded the primary coverage of $100,000. Knowing this fact, how Canal was to attempt settlement without running the risk of entering "bad-faith" negotiations with the original plaintiffs is unclear.

This case is, in reality, a direct suit by an excess carrier against a primary carrier and the primary carrier's lawyers. With reference to the appellees' statute of limitations defense, the majority permits the appellants to do indirectly what they are not permitted to do directly. The majority states that whatever causes of action may exist directly between an excess and a primary carrier are barred by computation of the statute of limitations, but the same causes of action on the same facts and same dates are within the statute of limitations when the excess carrier stands in the shoes of an original insured.

Whatever the viability of the "equitable subrogation" cause of action, and whether without allegations of negligence in handling of settlement matters being central to the suit, the cause may be properly termed a *Stowers* case, it is an unwarranted expansion of *Ranger County* to assume that a sophisticated insurance company is fairly put on notice for statute of limitations purposes only with the finality of judgment required for the normally unsophisticated insurance consumer.

In my opinion, allowing the appellants to receive the benefits of a statute of limitations beginning with the finality of a judgment is particularly inappropriate in this fact situation. The appellants in this case, through their own individual actions, chose to settle the case with the original plaintiffs, based solely on the knowledge they had relative to the alleged negligence of Canal and Canal's lawyers. The appellants settled the case while a motion was pending before the trial court that conceivably could have mooted many of the claims now sued upon.

If a hybrid *Stowers* cause of action is appropriately created here through an ex-panded application of *Ranger County*, justice requires a hybrid application of the *Stowers* statute of limitations rule. Under the facts of this case, I would begin to count the appellants' time in which to bring a lawsuit at the very latest from January 17, 1986, the date of the appellants' memorandum entitled, "Negligent Handling Problems," which listed numerous complaints the appellants had with the way Canal and Canal's lawyers handled the claim. I would agree with the majority that, in a direct cause of action, application of traditional rules in fixing the date from which a statute of limitations is computed begins with the appellants' actual knowledge of the events it now alleges were actionable negligence. Therefore, I agree with the majority's application of the statute of limitations computations to the direct causes of action alleged between the parties.

If the "equitable subrogation" right to sue is properly recognized, I would apply the same statute of limitations rule as the majority applies in the remainder of the case to the newly created case of action and affirm the ruling of the trial court in its entirety.